**John P. and Alice BONGIOVANNI,
Appellants,**

v.

**COMMISSIONER OF INTERNAL REV-
ENUE, Appellee.**

**No. 172, Docket 72-1597.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 26, 1972.

Decided Dec. 11, 1972.

Vincent E. Cerow, New York City, for appellants.

Dennis M. Donohue, Tax Div., Dept. of Justice, Washington, D. C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Paul M. Ginsburg, Tax Div., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before MOORE, HAYS and MULLIGAN, Circuit Judges.

HAYS, Circuit Judge:

The only point in contention on this appeal is whether Section 357(c) of the Internal Revenue Code of 1954, which imposes a tax on otherwise tax-free Section 351 transfers where the liabilities assumed by the taxpayer's wholly-owned corporation exceed the adjusted basis of property transferred, applies to a cash basis taxpayer's "liabilities" consisting of trade accounts payable.[1]  The Com-

---

1. Sections 351 and 357 read in pertinent part as follows:

Sec. 351. Transfer to corporation controlled by transferor.

(a) *General Rule.*—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation. For purposes of this section, stock or securities issued for services shall not be considered as issued in return for property.

(b) *Receipt of Property.*—If subsection (a) would apply to an exchange but for the fact that there is received, in addition to the stock or securities permitted to be received under subsection (a), other property or money, then—

(1) gain (if any) to such recipient shall be recognized, but not in excess of—

(A) the amount of money received, plus

(B) the fair market value of such other property received; * * *
* * * * *

(e) *Cross References.*—

(1) For special rule where another party to the exchange assumes a liability, or acquires property subject to a liability, see section 357.

Sec. 357.  Assumption of liability.
* * * * *

missioner determined that the transfer resulted in a taxable gain and the Tax Court affirmed his ruling. We reverse.

## I. Factual Background

John P. and Alice Bongiovanni, husband and wife, filed a joint federal income tax return for the year 1965 with the District Director of Internal Revenue at Hartford, Connecticut on or before the due date of April 15, 1966. Since Alice Bongiovanni is a party to this litigation solely because she filed the joint return with her husband, we will refer to John P. Bongiovanni as the "appellant" in this case.

From 1963 to 1965 taxpayer-appellant ran a masonry contracting business known as the Keystone Masonry Company. It was a sole proprietorship and operated on the cash receipts and disbursements method of accounting. On or about April 1, 1965, the taxpayer transferred all of the assets and liabilities of his sole proprietorship to the Keystone Masonry Corporation which had been duly organized under the laws of the State of Connecticut. The transaction was obviously undertaken with an eye to the benefits of the federal income tax laws involving business reorganizations and it met the requirements of Section 351 of the Internal Revenue Code. In exchange for the assets of the sole proprietorship, appellant received all of the stock of the corporation consisting of 500 shares of common stock listed on the books and records of the corporation at a value of $26,000, together with the corporation's promissory note in the amount of $51,253, payable on demand. The assets transferred to the corporation and the liabilities assumed were as follows:

| Item | Amount or Value | Appellant's Basis |
|---|---|---|
| Cash | $ 223 | $ 223 |
| Trade Receivables | 57,741 | –0– |
| Office Equipment | 1,160 | 1,160 |
| Work-in-Process | 22,762 | –0– |
| Raw Materials | 8,029 | –0– |
| Tools and Supplies | 4,575 | –0– |
| | $94,490 | $1,383 |
| Less: Payables | 17,237 | –0– |
| | $77,253 | $1,383 |

On appellant's income tax return for 1965 he attempted to adopt the accrual method of accounting to avoid the consequences of the Peter Raich case, 46 T.C. 604 (1966). The Tax Court ruled that the attempt to change accounting methods was unsuccessful, and that decision brought the issue presently on appeal to the fore.

The appellant attached a schedule to his income tax return which indicated that he had included in the gross receipts of the proprietorship work-in-process in the amount of $22,762 and raw materials in the amount of $8,029. He also deducted the trade accounts payable of the proprietorship which amounted to $17,237. The Commissioner, after examining appellant's return, reduced the stated gross receipts to exclude the amounts representing the work-in-process and the raw materials. He also disallowed appellant's deduction of $17,237 for the accounts payable on the grounds that that amount had not yet been paid by the appellant who was a cash basis taxpayer. Finally, the Commissioner determined that the appellant had realized taxable gain in the amount of $51,253 because the promissory note for that sum which

(c) *Liabilities in Excess of Basis.*—
(1) *In general.*—In the case of an exchange—
(A) to which section 351 applies, or
(B) to which section 361 applies by reason of a plan of reorganization within the meaning of section 368(a)(1)(D),
if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

appellant had received from the corporation constituted "other property" within the meaning of Section 351(b). These adjustments were accepted by the appellant and a resulting tax deficiency in the amount of $12,080.44 was duly assessed which is uncontested on this appeal.

A further deficiency of $5,778.49—the subject of this appeal—was assessed against the taxpayer and was attributable to the Commissioner's inclusion of an additional $15,854 in appellant's income. This adjustment was made by the Commissioner in accordance with his reading of Section 357(c) of the Code which requires a taxpayer to recognize gain on a transfer of the assets and liabilities of his business to his wholly-owned corporation to the extent that the liabilities transferred exceed the adjusted basis of the assets transferred. Because the appellant was on the cash basis method of accounting, his accounts receivable, work-in-process, raw materials and tools and supplies, all of which were transferred to the corporation, had an adjusted basis of zero. The Commissioner then determined that the liabilities assumed by the corporation which consisted of the accounts payable for which taxpayer had been denied a *deduction* because he was a cash basis taxpayer—exceeded the adjusted basis of the assets transferred by $15,854 as follows:

| Asset Transferred | Amount or Value | Taxpayer's Basis |
|---|---|---|
| Cash | $ 223 | $ 223 |
| Trade Receivables | 57,741 | –0– |
| Office Equipment | 1,160 | 1,160 |
| Work-in-Process | 22,762 | –0– |
| Raw Materials | 8,029 | –0– |
| Tools and Supplies | 4,575 | –0– |

|  |  |  |
|---|---|---|
| Total | $94,490 Adjusted basis | $ 1,383 |
| Liabilities assumed by the corporation | | $17,237 |
| Adjusted Basis of Property Transferred | | 1,383 |
| Liabilities in excess of basis under Section 357(c) | | $15,854 |

The excess of $15,854 was determined by the Commissioner to constitute ordinary gain taxable under Section 357(c)(1).

The Tax Court affirmed the Commissioner's determination in an opinion primarily devoted to an explanation of why the taxpayer's attempt to change his accounting method from the cash to the accrual basis had been futile. It relied on its decision in the *Peter Raich* case, supra, for its conclusion that the appellant's accounts payable were to be considered as liabilities of the sole proprietorship for the purposes of Section 357(c)—although appellant was a cash basis taxpayer and the "liabilities" had not been paid—and thus should be reflected in the taxpayer's taxable gain under Sections 351 and 357(c).

## II. Section 357(c) and The Cash Basis Taxpayer

We believe that the Tax Court erred in its interpretation of Section 357(c) when applied to a cash basis taxpayer involved in a tax-free Section 351 transfer of assets to his controlled corporation. Where property is transferred to a corporation solely in exchange for the stock or other securities of that corporation and immediately thereafter the transferor is in control of the corporation, Congress mandated through Section 351 that no gain or loss should be recognized for tax purposes. However, Section 357(c) provides that in a Section 351 exchange

"if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such an exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be."

Section 357(c)—if read literally—requires that "liabilities" assumed by the transferee corporation which exceed the aggregate adjusted basis of the properties transferred are to be considered as gain from the sale or exchange of that property. However, we believe that the word "liability" is used in Section 357(c) in the same sense as the word "liability"

referred to in the legislative history of Section 357(c). It was not meant to be synonymous with the strictly accounting liabilities involved in the case at bar. Section 357(c) was meant to apply to what might be called "tax" liabilities, i. e., liens in excess of tax costs, particularly mortgages encumbering property transferred in a Section 351 transaction. See 3 U.S.Code Cong. & Admin. News pp. 4064, 4266–67, 4908 (1954). Any other construction results in an absurdity in the case of a cash basis taxpayer whose trade accounts payable are not recognized as a deduction (because he is on the cash basis) but whose "liabilities" (although unpaid) *are* recognized for purposes of Section 357(c). The payables of a cash basis taxpayer are "liabilities" for *accounting* purposes but should not be considered "liabilities" for *tax* purposes under Section 357(c) until they are paid. See Note, Section 357(c) And The Cash Basis Taxpayer, 115 U.Pa.L.Rev. 1154 (1967).

The Tax Court has reiterated its conclusions regarding Section 357(c) in cases other than *Raich* and the one at bar, see Alderman v. Commissioner, 55 T.C. 662 (1971) and we are not unaware of the comments of other authorities which support the Tax Court's interpretation in this matter. See Testor v. Commissioner, 327 F.2d 788 (7th Cir. 1964); White, Sleepers That Travel with Section 351 Transfers, 56 Va.L.Rev. 37, 42, fn. 27 (1970). However, we believe that at least on the facts in this case, a too literal reading of the words of the statute produces an inequitable result which cannot be allowed to stand. As the Supreme Court has said,

"When . . . [plain] meaning has led to absurd or futile results . . . this Court has looked beyond the words to the purpose of the act. Frequently . . . even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legis-

lation as a whole' this Court has followed that purpose, rather than the literal words."

United States v. American Trucking Associations, Inc., 310 U.S. 534, 543, 60 S. Ct. 1059, 1064, 84 L.Ed. 1345 (1940) (footnotes omitted).

On the oral argument of this appeal counsel for the Commissioner characterized the Tax Court's interpretation of Section 357(c) as a "trap for the unwary." By changing to an accrual basis the wary taxpayer can avoid the tax levied upon a cash basis taxpayer. See Rev.Rul. 69–442, 1969–2 Cum.Bull. 53, which states in part:

" . . . the Service wishes to point out that the trade accounts receivable would not have had a zero basis if the taxpayer had been on the accrual method of accounting prior to the transfer of the business under section 351 of the Code."

There is no justification for making an accounting method inadvertently chosen by the taxpayer determinative of the tax benefits and disadvantages of that taxpayer. Section 351 was intended as a relief provision to encourage tax-free business reorganizations. Though the legislative history of Section 357(c) is not very illuminating, apparently the purpose of that section was to prevent a taxpayer's acquiring a permanently tax-free gain by mortgaging certain of his property for an amount in excess of basis and then transferring property and mortgage under Section 351. In the present situation there is no such tax avoidance purpose; nor could the transfer possibly have such a result. The application of a combination of Sections 351 and 357 (c) to trap an individual merely because he is a cash basis taxpayer rather than an accrual basis taxpayer is unacceptable. This is especially so since neither of the provisions in question has any relevance whatsoever to a taxpayer's accounting methods. See Burke and Chisholm, Section 357: A Hidden Trap in Tax-Free

Incorporations, 25 Tax L.Rev. 211, 232 (1970).

The Bongiovannis are disadvantaged twice—if not "taxed" twice—by the Commissioner's interpretation. Appellant is denied a deduction for his uncollected liabilities since he was on the cash basis but those liabilities are recognized as gain under the Commissioner's strict reading of Section 357(c). It is no answer to say that the taxpayer's wholly-owned corporation will eventually reap a benefit which will redound to the appellant. The corporate taxpayer would be entitled to its deduction whether or not the cash basis individual taxpayer had been taxed under Section 357(c). See Treas.Reg. § 1.461–1(a)(2).

Congress certainly could not have intended such an inequitable result especially in light of its expressed purposes in enacting Sections 351 and 357(c). Moreover, as the House report on the 1954 Internal Revenue Code stated most emphatically, the bill (which with minor alterations was to become the Act) was "designed to insure that the same tax consequences result from the different types of transactions which are available to accomplish substantially the same result." 3 U.S.Code Cong. & Admin.News p. 4064 (1954). We see no reason why different tax consequences under Section 357(c) should arise from identical circumstances because of the wholly unrelated selection of an accounting method.

The views of the Commissioner and the Tax Court on the interpretation of Section 357(c) *as applied to a cash basis taxpayer* fly in the face of the sound judicial principles noted above. The Tax Court itself expressed reservations in its *Peter Raich* opinion when it noted:

> "[W]e are not unmindful that the result reached may conflict with the well-established intent of Congress to foster tax-free reorganizations."

46 T.C. at 611.

We reverse the decision of the Tax Court insofar as the Section 357(c) adjustment is concerned.