GEORGE W. WIEBUSCH AND CORINNA JANE WIEBUSCH, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1049–71. Filed March 8, 1973.

George W. Wiebusch, pro se.
*Leonard A. Hammes, Jr.*, for the respondent.

### FINDINGS OF FACT

STERRETT, *Judge:* The Commissioner determined deficiencies in petitioners' Federal income tax as follows:

| Calendar year | Amount |
| --- | --- |
| 1964 | $5, 862. 80 |
| 1965 | 107. 01 |
| 1966 | 1, 071. 80 |

Concessions have been made by the petitioners leaving the following issues for our determination:

(1) Whether petitioners must recognize as gain on the transfer of property to a corporation the excess of liabilities over the basis of the property transferred pursuant to section 357(c), I.R.C. 1954.[1]

(2) Whether petitioners are precluded by section 1374(c)(2) from deducting losses of an electing small business corporation against their personal income tax liability.

Some of the facts have been stipulated and are so found. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference.

The petitioners, George W. Wiebusch and Corinna Jane Wiebusch, are husband and wife residing at the time of the filing of the petition herein at Broken Bow, Nebr. Using the cash basis of accounting, they

---

[1] All statutory references herein are to the Internal Revenue Code of 1954 unless otherwise indicated.

filed their joint Federal income tax returns for the calendar years 1964, 1965, and 1966 with the district director of internal revenue at Omaha, Nebr.

Prior to January 1, 1964, the petitioners operated a ranching business as a sole proprietorship. On January 2, 1964, they formed a corporation known as the Wiebusch Land & Cattle Co. (hereinafter referred to as L & C or the corporation). Articles of incorporation were duly filed with the secretary of state of Nebraska. L & C elected to be taxed as a small business corporation pursuant to the provisions of subchapter S, sections 1371 through 1379.

The assets of the ranching operation were transferred to L & C in exchange for the corporation's stock. Immediately following this exchange, the stock was held as follows:

| Shareholder | Number of shares |
|---|---|
| Corinna Jane Wiebusch | 880 |
| Vaughn A. Wiebusch | 60 |
| Harold K. Wiebusch | 60 |
| Total issued shares | 1000 |

Vaughn A. and Harold K. Wiebusch are the sons of petitioners.

The assets which the petitioners transferred to the corporation had adjusted bases in their hands as follows:

| Asset | Adjusted basis |
|---|---|
| Blaine County Farm | $32,000.00 |
| Improvement to Blaine County Farm | 9,684.03 |
| Custer County Farm | 32,540.00 |
| Improvements to Custer County Farm | 1,200.00 |
| Livestock, machinery, equipment, and other personal property | 43,795.05 |
| Total | 119,219.08 |

The fair market value of these assets at the time of incorporation was $292,975. However, petitioners' ranching operation was subject to liabilities in the amount of $180,441.33. The following liabilities were assumed by the corporation as part of the exchange:

| Creditor | | Amount |
|---|---|---|
| Prudential Insurance Co. (ranch loan, principal, and interest) | | $80,739.33 |
| Prudential Insurance Co. (farm loan) | | 17,600.00 |
| Broken Bow Production Credit Co. (livestock, machinery, auto, truck, feed, pickup) | | 54,060.00 |
| | | 152,399.33 |
| Miscellaneous debts: | | |
| First National Bank | $3,500 | |
| Helen Wiebusch | 9,882 | |
| Protective Savings & Loan | 12,000 | |
| Ernest Poland | 350 | |
| Taxes | 2,310 | |
| | | 28,042.00 |
| Total | | 180,441.33 |

Attached to petitioners' Federal income tax return for 1964, and substantially reiterated in the Federal income tax return (Form 1120–S) of L & C, was the following statement:

(6) With respect to liabilities of the transferors assumed by the controlled corporation:

(i & ii) The nature of the liabilities, when and under what circumstances created:

The liabilities are set out on page 1, totalling $180,441.33. All were created during the past twenty years while the farming and ranching business which is involved in the incorporation was being built. All loans were used for operating expenses, the purchase of breeding stock, improvements, machinery and equipment.

(iii) The corporate business reason for assumption by the controlled corporation:

Since the assets that were involved in the transfer owed their very existence to the indebtedness mentioned, the only logical conclusion is that repayment of such indebtedness should ultimately come from such assets.

(iv) Whether such assumption eliminates the transferor's primary liability:

It does not eliminate transferor's primary liability.

\* \* \* \* \* \* \*

The above statement of all facts pertinent to the exchange of property for stock of the controlled corporation is made for the purpose of complying with the regulations of the Internal Revenue Service.

(Signed)   CORINNA JANE WIERBUSCH,
                          *Taxpayer.*

During the years in issue, promissory notes, mortgages, and other evidence of indebtedness, which were executed after the corporation was formed, were signed by George W. Wiebusch as president of L & C, Corinna Jane Wiebusch as secretary, and by Corinna Jane Wiebusch in her individual capacity.

L & C filed Federal income tax returns for 1964, 1965, and 1966 indicating the following net losses and petitioners' share of such losses:

| Calendar year | Loss | Petitioners' share |
|---|---|---|
| 1964 | $15, 336. 54 | $13, 496. 05 |
| 1965 | 27, 224. 88 | 21, 779. 90 |
| 1966 | 18, 104. 91 | 13, 759. 73 |

Petitioners deducted their share of the corporation's losses for the calendar years 1964, 1965, and 1966 in determining their personal income tax liabilities. In his statutory notice of deficiency respondent disallowed these asserted deductions.

### OPINION

Petitioners transferred assets with an adjusted basis of $119,219.08 and a fair market value of $292,975 to L & C, a subchapter S corpora-

tion, in exchange for L & C stock. The assets were subject to liabilities in the amount of $180,441.33. During 1964, 1965, and 1966, the first 3 years of operation, petitioners' share of L & C losses were $13,496.05, $21,779.90, and $13,759.73, respectively. They deducted these losses in determining their personal tax liability for each year.

The first issue we must decide is whether the petitioners must recognize as gain the excess of the liabilities assumed over the adjusted basis of property transferred to their corporation pursuant to section 357(c).

Section 351 permits the tax-free transfer of property to a corporation in exchange solely for stock in such corporation where the transferors of the property are in control (as defined in section 368(c)) immediately after the exchange. It is not disputed that a valid 351 transaction occurred in the instant case. However, section 357(c) provides an exception to the complete tax-free nature of the transaction in the following circumstances:

> (c) LIABILITIES IN EXCESS OF BASIS.—
>> (1) IN GENERAL.—In the case of an exchange—
>>> (A) to which section 351 applies, * * *
>
> &ast;   &ast;   &ast;   &ast;   &ast;   &ast;   &ast;
>
> if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

The petitioners admit that their transfer falls within the express language of section 357(c). However they attack the constitutionality of the statute because "there is no equality of treatment between the non-debtor taxpayer and the debtor taxpayer in the area of setting up a family controlled corporation."

Initially we point out that section 357(a) gives "debtors" the same tax-free treatment afforded those who do not transfer liabilities to a corporation.[2] It is only when there is tax avoidance within the meaning of section 357(b) or where liabilities exceed the adjusted basis of property transferred that recognition must occur. *Testor* v. *Commis-*

---

[2] SEC. 357. ASSUMPTION OF LIABILITY.

(a) GENERAL RULE.—Except as provided in subsections (b) and (c), if—

(1) the taxpayer receives property which would be permitted to be received under section 351, 361, 371 or 374 without the recognition of gain if it were the sole consideration, and

(2) as part of the consideration, another party to the exchange assumes a liability of the taxpayer, or acquires from the taxpayer property subject to a liability, then such assumption or acquisition shall not be treated as money or other property, and shall not prevent the exchange from being within the provisions of section 351, 361, 371 or 374, as the case may be.

*sioner*, 327 F. 2d 788 (C.A. 7, 1964), affirming 40 T.C. 273 (1963); *Velma W. Alderman*, 55 T.C. 662 (1971); *Peter Raich*, 46 T.C. 604 (1966).

In the instant case we are not dealing with the difficult problem of how to treat accounts payable on incorporation. See *Peter Raich, supra*.[3] Rather we are primarily dealing with conventional secured liabilities incurred in the normal course of operating a business which, as indicated on both petitioners' and L & C's income tax returns, were assumed by L & C.[4] Generally the basis of property is its cost. Sec. 1012. The cost will include the value of any mortgages to which the property is subject at the time of purchase. *Crane* v. *Commissioner*, 331 U.S. 1 (1947); *Parker* v. *Delaney*, 186 F. 2d 455 (C.A. 1, 1950); *David F. Bolger*, 59 T.C. 760 (1973). It is only when some tax benefit occurs, for example depreciation or further indebtedness on the property which yields tax-free cash not included in cost, that the liabilities will exceed the adjusted basis therein.

Because of the inherent tax benefit creating the excess liabilities, we find it reasonable for Congress to have chosen incorporation as an appropriate time to recognize these benefits, though normally such an occurrence qualifies as a tax-free transaction. It is well settled that a legislative classification will not be set aside if any state of facts justifying it is demonstrated to, or perceived by, the courts. *United States* v. *Maryland Savings-Share Ins. Corp.*, 400 U.S. 4, 6 (1970); *McDonald* v. *Board of Election*, 394 U.S. 802, 809 (1969).

In the present case, the petitioners' adjusted basis in the property transferred to L & C was $119,219.08. Liabilities existed on such property in the amount of $180,441.33. On brief, the petitioners have indicated that their tax basis was the result of their costs minus depreciation. In light of extensive depreciation taken by the petitioners in years prior to the incorporation of L & C, we do not feel the effects of section 357(c) are unreasonable.

The second issue we must face is whether section 1374(c)(2) precludes the deduction of losses of L & C, a subchapter S corporation, against the petitioners' personal income tax liability.

---

[3] *Bongiovanni* v. *Commissioner*, 470 F.2d 921 (C.A. 2, 1972), reversing a Memorandum Opinion of this Court, is distinguishable on its facts because in the instant case the petitioner did not transfer accounts payable or accounts receivable to L & C on incorporation.

[4] Petitioners argue that they retained personal liability on the indebtedness transferred to L & C. Because it is clear that L & C was to pay any indebtedness, this would lead to the conclusion that the property was transferred subject to the liabilities rather than assumed by L & C. As long as the fair market value of the property exceeds the liabilities thereon, there is no distinction between taking property subject to liabilities or the assumption of liabilities. Cf. sec. 752(c).

Section 358 provides the basis of the stock held by the transferors as follows:

SEC. 358. BASIS TO DISTRIBUTEES.

(a) GENERAL RULE.—In the case of an exchange to which section 351, 354, 355, 356, 361, or 371(b) applies—

(1) NONRECOGNITION PROPERTY.—The basis of the property permitted to be received under such section without the recognition of gain or loss shall be the same as that of the property exchanged—

(A) decreased by—

(i) the fair market value of any other property (except money) received by the taxpayer,

(ii) the amount of any money received by the taxpayer, and

(iii) the amount of loss to the taxpayer which was recognized on such exchange, and

(B) increased by—

(i) the amount which was treated as a dividend, and

(ii) the amount of gain to the taxpayer which was recognized on such exchange (not including any portion of such gain which was treated as a dividend).

\* \* \* \* \* \* \*

(d) ASSUMPTION OF LIABILITY.—Where, as part of the consideration to the taxpayer, another party to the exchange assumed a liability of the taxpayer or acquired from the taxpayer property subject to a liability, such assumption or acquisition (in the amount of the liability) shall, for purposes of this section, be treated as money received by the taxpayer on the exchange.

Applying the statute to the facts of the instant case, the petitioners' basis in their L & C stock is $119,219.08 decreased by liabilities of $180,441.33 (which is treated as money) and increased by the amount of gain recognized on the exchange of $61,222.25, which equals a basis of zero. The foregoing can be reflected as follows:

$119, 219. 08_____ Basis of property exchanged
—180, 441. 33_____ Liabilities assumed (money)
+ 61, 222. 25_____ Gain recognized

= 0

While section 1374(b) allows a shareholder to offset his portion of a properly electing small business corporation loss against his personal income,[5] section 1374(c)(2) limits this carry-through effect as follows:

(2) LIMITATION.—A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of—

[5] CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS.

(b) ALLOWANCE OF DEDUCTION.—Each person who is a shareholder of an electing small business corporation at any time during a taxable year of the corporation in which it has a net operating loss shall be allowed as a deduction from gross income, for his taxable year in which or with which the taxable year of the corporation ends (or for the final taxable year of a shareholder who dies before the end of the corporation's taxable year), an amount equal to his portion of the corporation's net operating loss (as determined under subsection (c)).

(A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition), and

(B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation).

Since the petitioners' basis in their stock did not increase in the years in question, and further because there was no apparent L & C indebtedness to the petitioners, their basis remained a constant zero. Hence they are not entitled to any carry-through of any portion of L & C losses. See *Byrne* v. *Commissioner*, 361 F. 2d 939 (C.A. 7, 1966), affirming 45 T.C. 151 (1965); *Richard Lee Plowden*, 48 T.C. 666 (1967), affirmed per curiam sub nom. *Roberts* v. *Commissioner*, 398 F. 2d 340 (C.A. 4, 1968); *Ruth M. Prashker*, 59 T.C. 172 (1972).

We are not without sympathy for the petitioners, for this case is simply another illustration of the frequently heard statement that subchapter S can be a bitter trap for the unwary. As exemplified here the petitioners, by the simple act of shifting their business assets from a sole proprietorship to a subchapter S corporation, incurred a statutorily created gain on the transfer and, at the same time, forfeited the right to deduct the business's subsequent losses, which would otherwise have been available to them, on their own personal tax returns. Taxwise it might be fairly said that petitioners should have "stayed in bed."

For these reasons,

*Decision will be entered for the respondent.*