HITACHI SALES CORPORATION OF AMERICA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent *
Hitachi Sales Corp. v. Commissioner
Docket No. 21663-90
United States Tax Court
T.C. Memo 1994-159; 1994 Tax Ct. Memo LEXIS 160; 67 T.C.M. (CCH) 2659; April 14, 1994, Filed *160 Evidence in the record demonstrates that (1) P valued inventory in accordance with the "lower of cost or market" method, and (2) P's method of accounting involved valuing inventory cost at 125 percent of invoice cost. During the years at issue, P attempted to mark down certain classes of its inventory to reflect reductions in market value. That markdown was disallowed in our earlier opinion, Hitachi Sales Corp. of America v. Commissioner, T.C. Memo. 1992-504, due to lack of substantiation. R moves for partial summary judgment that P must value closing inventory at 125 percent of invoice cost because no consent to use a new accounting method has been requested or granted. Sec. 446(e), I.R.C. P opposes R's motion, arguing that it valued inventory at market value, without regard to cost (and specifically, without regard to 125 percent of invoice cost). Alternatively, P argues that, if it must value inventory at 125 percent of invoice cost, no adjustment under sec. 481, I.R.C., should be made, either because (1) R has not changed P's method of accounting or (2) R has delayed too long in raising sec. 481, I.R.C.
1. Held: P has not set forth specific *161 facts demonstrating that there is a genuine dispute as to its method of accounting. See Rule 121(d), Tax Court Rules of Practice and Procedure. Accordingly, we find: (1) P valued inventory in accordance with the lower of cost or market method, and (2) P's method of accounting involved valuing inventory cost at 125 percent of invoice cost. P valued inventory at the lower of 125 percent of invoice cost or market. 2. Held, further, R has changed P's method of accounting with regard to inventory and has not merely corrected an error within P's method. 3. Held, further, R did not delay too long in raising an adjustment under sec. 481, I.R.C.
For Petitioner: Nancy L. Iredale and Robert A. Earnest. For Respondent: Anne Hintermeister, Frances Ferrito Regan, and Steven R. Winningham. HALPERN
HALPERN
SUPPLEMENTAL MEMORANDUM OPINION HALPERN, Judge: This matter is before the Court on respondent's motion for partial summary judgment, filed April 30, 1993 (the present motion), concerning the method petitioner must use in computing its inventory costs. In order to facilitate a more complete discussion of the present motion, we will briefly review the relevant history *162 of this case. Unless otherwise noted, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. I. Introduction
Petitioner, a subsidiary of Hitachi Sales Corp. (a Japanese corporation), was in the business of selling Hitachi brand consumer electronics equipment in the United States during the years at issue (taxable years ended March 31, 1982, 1983, and 1984). Petitioner indicated on its Federal income tax returns for those years that it used a method of accounting whereby inventory always was valued at the lower of cost or market value ("lower of cost or market" method). Consistent with that method, petitioner, in making its returns for the years at issue, valued certain inventory items at amounts less than cost, due to purported decreases in market value. [1] This had the effect of increasing petitioner's cost of goods sold, [2] thereby reducing taxable income. In a motion for partial summary judgment dated March 2, 1992, respondent asked us to conclude that petitioner was not entitled to that markdown. In our earlier opinion in this case ( Hitachi Sales Corp. of America v. Commissioner, T.C. Memo. 1992-504), *163 we agreed with respondent on the ground that petitioner had failed even to assert specific facts that would substantiate petitioner's determination of market value. See Rule 121(d). Accordingly, in our order dated September 9, 1992, we granted respondent's March 2, 1992, motion for partial summary judgment with respect to that issue. By order dated January 22, 1993, however, we modified our order of September 9, 1992, providing that "respondent's motion [dated March 2, 1992] is not granted to the extent that it would preclude petitioner hereafter from raising any issue with regard to the cost of its inventory that, properly it may raise." In its motion for reconsideration, filed October 2, 1992, petitioner sought, inter alia, to value its inventory at invoice cost, rather than at 125 percent of invoice, as determined by respondent in her notice of deficiency. That brings us to the present motion. On April 30, 1993, respondent filed a motion for partial summary judgment, arguing that (1) petitioner's historic method of accounting involves valuing inventory at 125 percent of invoice cost; (2) petitioner has neither requested nor been granted permission to change that method, as *164 would be required under section 446(e); and, therefore, (3) petitioner must continue to value its ending inventory at 125 percent of invoice cost. Petitioner opposes respondent's motion on the ground that its accounting method involves valuing inventory at market value, without regard to cost. Alternatively, petitioner argues that, if ending inventory must be valued at 125 percent of invoice cost, opening inventory likewise must be valued by that method, and it may adjust the returns at issue accordingly. Respondent concedes that opening and closing inventory must be valued by the same method, but urges that an adjustment be made pursuant to section 481(a). *165 II. Summary Judgment
A summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b). However, genuine factual disputes may not be resolved in such proceedings. E.g., Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). The party moving for summary judgment must demonstrate the absence of a genuine dispute as to any material fact. E.g., id. Nevertheless, to defeat a motion for summary judgment, the opposing party must do more than merely allege or deny facts in its pleadings, but must "set forth specific facts showing that there is a genuine issue for trial." Rule 121(d). The parties have filed a joint stipulation of facts and attached exhibits as well as various affidavits and memoranda of law. Respondent has also filed a status report (September 24, 1993). [3] Petitioner has done likewise (September 24, 1993). We accept the stipulated facts as true for purposes of deciding the present motion. *166 The stipulation of facts and attached exhibits are incorporated by this reference. III. Consent Required To Change Method of Accounting
Section 446(e) provides that a taxpayer must obtain the advance consent of the Commissioner before changing from one method of accounting to another. The Commissioner may, of course, consent to a taxpayer's request for a retroactive change in its method of accounting, but is under no obligation to do so. Barber v. Commissioner, 64 T.C. 314, 318 (1975). Further, the requirement of advance consent applies even if the taxpayer's method of accounting, from which he seeks a change, is erroneous. Bongiovanni v. Commissioner, T.C. Memo. 1971-262, revd. on other grounds 470 F.2d 921 (2d Cir. 1972). *167 A change in method of accounting includes a "change involving the method or basis used in the valuation of inventories". Sec. 1.446-1(e)(2)(ii)(a), Income Tax Regs.; see also sec. 1.446-1(e)(2)(ii)(c), Income Tax Regs. ("A change in an overall plan or system of identifying or valuing items in inventory is a change in method of accounting."). More specifically, a change from an improper method of computing inventory costs to a proper one is a change in method of accounting. See sec. 1.446-1(e)(2)(iii), Income Tax Regs. (where inventory cost historically had been computed improperly because overhead costs were not included, properly computing inventory cost would constitute a change in accounting method). Thus, it is clear that, if petitioner's historic method of accounting includes valuing inventory at 125 percent of invoice cost, valuing inventory at actual invoice cost would be a change in accounting method, sec. 1.446-1(e)(2)(ii)(a), (c) and (iii), Income Tax Regs., for which consent must be granted. Sec. 446(e). Accordingly, we must inquire as to how petitioner historically has valued its inventory. IV. Petitioner's Method of Valuing Inventory
During the years *168 at issue, petitioner utilized the accrual method of accounting for its inventory, and valued its inventory using the lower of cost or market method. That method was applied to, among other items, an inventory of spare parts maintained by petitioner during the years at issue. The parties agree that, during and prior to the taxable years at issue, petitioner generally valued its spare parts inventory at what petitioner termed "standard cost", for financial accounting purposes. [4] *169 Standard cost is equal to 125 percent of invoice cost. [5] The parties do not agree as to whether petitioner valued its spare parts inventory in the same manner for tax purposes. Respondent contends that petitioner also valued its spare parts inventory using standard cost for tax purposes. [6] Petitioner contends that it "maintained its spare parts inventory at market value" and thus "never valued its spare parts inventory at '125 percent of invoice cost' on its tax returns." Respondent directs our attention to substantial evidence in the record that supports her contention. First, respondent directs our attention to petitioner's tax returns and financial statements for the periods ending March 31, 1982, 1983, and 1984, respectively. With respect to each such taxable year, the figures for cost of goods sold and closing inventory are precisely the same on petitioner's tax return as on its financial statement. [7] *171 Moreover, Schedule M-1 to those tax returns, which schedule is entitled "Reconciliation of Income Per Books With Income Per Return", lacks any indication that, with regard to petitioner's spare parts inventory, cost of goods sold or closing inventory were computed by a different method *170 for financial accounting purposes. Based on the fact that, for inventory costs overall, the same cost-of-goods-sold and closing-inventory figures were used for both financial accounting and tax purposes, respondent asks us to draw the inference that identical figures -- and identical accounting methods -- were used for petitioner's spare parts inventory. [8] Nevertheless, petitioner insists that, for tax purposes, it valued its spare parts inventory at market value, without regard to standard cost (which it concededly used for financial accounting purposes). [9] However, petitioner does not endeavor to explain how it is that those different methods produced identical results for each year at issue. [10]
Second, respondent directs our attention to two sworn affidavits submitted by petitioner in support of an earlier cross-motion (by petitioner) *172 for summary judgment. The first affidavit, by Ronald C. Wilcox, a partner in the accounting firm that prepared petitioner's financial statements and tax returns, states in pertinent part as follows: 3. For financial accounting and tax accounting purposes, Petitioner initially carries its spare parts inventory on its books at 25 percent over its actual cost in order to reflect the costs Petitioner would incur to transport, insure and handle these spare parts. Consequently, the dollar amount assigned to Petitioner's spare parts inventory must be reduced by 20 percent to arrive at the actual "cost" of the inventory. 4. Based on a 1981 study, Petitioner determined that its regular moving inventory of spare parts, i.e., the top 1000 selling spare parts, should not be written down. However, the remaining inventory consisted of approximately 50,000 items that were either slow moving with no active market (usually less than three items per year) or non-moving (no sales within three months). To accurately reflect the market value of these slow moving and non-moving spare parts, it was necessary to write down the slow moving and non-moving inventory by 90 percent.
The second *173 affidavit, by Rod Ruff, an employee of petitioner, is quite similar to the first and states in pertinent part as follows: 2. For financial accounting and tax accounting purposes, Petitioner regularly recorded its imported spare parts inventory on its books at 25 percent over its invoice cost in order to reflect the costs Petitioner expected to incur to transport, insure and handle its spare parts inventory. Consequently, the dollar amount assigned to Petitioner's imported spare parts inventory must be reduced by 20 percent to arrive at the actual invoice cost of the spare parts inventory. 3. Based on a 1981 study, Petitioner determined * * * its regular moving inventory of spare parts, i.e., the top 1,000 selling spare parts by sales quantity. The remaining inventory consisted of approximately 50,000 items that were either inactive or slow-moving.
Respondent argues that those affidavits leave little room for doubt that, on its tax returns, petitioner valued its inventory (including its closing inventory) at 125 percent of invoice cost (standard cost). Indeed, the phrase "For financial accounting and tax accounting purposes" clearly suggests the identity of treatment *174 argued by respondent. Petitioner makes two arguments in response. First, petitioner argues that the phrase "on its books", which appears in both affidavits, "merely shows that Petitioner's financial accounting records generally formed the starting point for preparing its tax return." (Fn. ref. omitted.) We disagree. If that were the case, we think the affidavits would have continued to explain what adjustments were made for tax purposes. No such explanation is provided. Second, petitioner insists that, read in its entirety, the Wilcox affidavit demonstrates that "Petitioner ignored the actual cost of the inventory and merely attempted to value its spare parts inventory at market value." [11] In making that argument, petitioner continues: For each year at issue, Petitioner determined that the market value of its spare parts inventory was $ 420,000 * * * Thus, for tax purposes, Petitioner never calculated the actual cost of its spare parts inventory nor compared it with market value to determine which was lower.
*175 We do not think the Wilcox affidavit, or for that matter the Ruff affidavit, even remotely supports that conclusion. It is true, of course, and both affidavits demonstrate, that petitioner did attempt to value certain inventory items (slow-moving and nonmoving items) at purported market value in the taxable years here at issue. Such attempted market valuation, however, is entirely consistent with the lower of cost or market method, which we believe petitioner used prior to and during the taxable years at issue. Moreover, the affidavits' respective statements that petitioner valued its spare parts inventory at 25 percent over invoice (actual) cost "For financial accounting and tax accounting purposes" convincingly refutes petitioner's contention that cost was not a consideration for tax purposes. Lastly, even if the affidavits did suggest that petitioner valued its spare parts inventory at market value, without regard to cost, during the years at issue, it still would appear that such was not petitioner's historic practice prior to those years. Both affidavits refer to a 1981 study, whereby petitioner determined that certain spare parts either were slow moving or nonmoving, *176 and therefore ought to be marked down; neither mentions any markdowns made prior to the 1981 study. Thus, even if we viewed petitioner as attempting to value its spare parts inventory at market value during the years at issue, the affidavits still would suggest that such was a deviation (for which consent was neither sought nor received) from petitioner's prior method of valuing its spare parts inventory at standard cost. Certainly, a preponderance of the evidence suggests that (absent a lower market value) petitioner historically has valued its inventory (including its spare parts inventory) at standard cost for tax purposes. However, petitioner has not been afforded a trial and we ought not find in respondent's favor if there exists a genuine dispute as to this factual issue. E.g., Espinoza v. Commissioner, 78 T.C. 412, 416 (1982). We perceive no genuine dispute and therefore consider summary judgment appropriate. Rule 121(b). Absent any contradictory evidence, the tax returns, financial statements, and affidavits discussed above clearly would compel a finding in respondent's favor. Petitioner has done nothing more than offer an implausible *177 interpretation of the affidavits and conclusorily assert that it valued its spare parts inventory at market value, completely disregarding cost. Petitioner has not suggested a single specific fact it would hope to adduce at trial to undercut respondent's proof or otherwise support its argument.[12] *178 See Rule 121(d). Therefore, we conclude that petitioner (1) used the lower of cost or market method, and (2) valued inventory cost at 125 percent of invoice (standard cost). Accordingly, no consent to change from that method having been requested or received, and there being no acceptable evidence (or prospect of such evidence) as to market value (see Hitachi Sales Corp. of America v. Commissioner, T.C. Memo. 1992-504), respondent's adjustments requiring that closing inventory be valued at standard cost are sustained. Sec. 446(e). [13]
At one time there may have been some disagreement between the parties as to whether, if the Court were to determine that petitioner had to value closing inventory at standard cost (we have so determined), petitioner must value opening inventory for the first year here in issue at standard cost. There is, however, no such disagreement now. Respondent *179 reports that the parties are in agreement that that is the case. We agree. See Primo Pants Co. v. Commissioner, 78 T.C. 705, 725 (1982). V. Section 481 Adjustment
Petitioner recognizes that (1) section 481 prescribes rules to be followed in computing taxable income in cases where taxable income is computed under a method of accounting different from that under which taxable income previously was computed and (2) application of those rules to petitioner for the first year here in issue may call for an adjustment unfavorable to petitioner. Petitioner attempts to escape an unfavorable adjustment under section 481 by claiming that (1) section 481 does not apply in this case or (2) it should not apply since respondent has been tardy in claiming its application. a. Section 481 Does Apply
"A change in method of accounting to which section 481 applies includes a change in the over-all method of accounting for gross income or deductions, or a change in the treatment of a material item." Sec. 1.481-1(a)(1), Income Tax Regs. The term "material item" is defined in section 1.446-1(e)(2)(ii)(a), Income Tax Regs.: "A material item is any item which *180 involves the proper time for the inclusion of the item in income or the taking of a deduction." That section continues: "Changes in method of accounting include * * * a change involving the method or basis used in the valuation of inventories". The discovery of inconsistencies in the application of a method of accounting and the correction of those inconsistencies, however, do not necessarily constitute a change of accounting method. Potter v. Commissioner, 44 T.C. 159, 170-171 (1965); see Gimbel Bros., Inc. v. United States, 210 Ct. Cl. 17, 535 F.2d 14, 23 (1976) ("There was one method of accounting, the installment method. An error was made by not applying the method to the rotating charge accounts. There was no change in accounting methods but, rather, the correction of an error."); Standard Oil Co. (Indiana) v. Commissioner, 77 T.C. 349, 383 (1981). Petitioner seeks to escape an unfavorable adjustment under section 481 by arguing that: If Respondent is correct that petitioner uses a method of accounting for spare parts that values inventory at cost plus 25 percent, *181 then Respondent's adjustment is the correction of an error within a method of accounting, will not constitute a change in method of accounting, and is not subject to the provisions of 481(a).
It is unclear precisely what petitioner is getting at here, given its previous argument that, for tax purposes, it "maintained its spare parts inventory at market value" and thus "never valued its spare parts inventory at '125 percent of invoice cost' on its tax returns." Perhaps all that petitioner is saying is that it never used a correct method of valuing inventory at the lower of cost or market. With that we agree. Moreover, we think that there is sufficient evidence to conclude that petitioner did value inventory at the lower of cost or market for tax purposes, albeit determining market in an erroneous manner. See infra; Hitachi Sales Corp. of America v. Commissioner, T.C. Memo. 1992-504. We also think that there is sufficient evidence that, under petitioner's erroneous method of determining market, there was no inconsistency when slow-moving and nonmoving inventory were written down by 90 percent "to accurately reflect the market". See Wilcox *182 affidavit, supra. Therefore, we add to our previous conclusions for which we determined no genuine dispute, and for which we found summary judgment appropriate, that respondent is not merely correcting an error within petitioner's method of accounting but, rather, is changing petitioner's method of accounting from a method that erroneously determined market value. See section 1.446-1(e)(2)(ii)(a), Income Tax Regs. ("Changes in method of accounting include * * * a change involving the method or basis used in the valuation of inventories"); Fruehauf Trailer Co. v. Commissioner, 42 T.C. 83, 105 (1964) (change in the inventorying of used trailers from $ 1 per unit to the lower of cost or market was a change in method of accounting), affd. 356 F.2d 975 (6th Cir. 1966); cf. Primo Pants Co. v Commissioner, supra at 724 (reevaluation of inventory constitutes change in method of accounting). We conclude that section 481 is applicable because respondent has determined (and we have sustained) a change in method of accounting. b. Section 481 Should Apply
Respondent's notice of deficiency *183 in this case clearly states that petitioner's write-down of its parts inventory to $ 420,000 in each year is unsubstantiated and, therefore, is disallowed. The notice of deficiency then calculates an "Adjustment to Ending Inventory" for each year (taking into account the previous year's adjustment) to implement such disallowance. No reference is made either to any adjustment to opening inventory or to the necessity of any section 481 adjustment. [14] The notice of deficiency is dated June 28, 1990. Petitioner has assigned error to respondent's disallowance of its inventory write-down. *184 Following the receipt of the parties' papers and memoranda concerning the present motion, the Court informally asked the parties to respond to several questions, including a question concerning the application of section 481. In its status report dated September 24, 1993, petitioner argues that, because respondent's revenue agent did not raise any section 481 issue, petitioner materially was impeded in its ability to resolve that issue during the process of examination and appeal that it went through with respondent. Petitioner maintains that it would be manifestly unfair to it for respondent to insist on a section 481 adjustment at this stage in the proceeding. See Commissioner v. Transport Manufacturing & Equip. Co., 478 F.2d 731, 736 (8th Cir. 1973) (taxpayer surprised and disadvantaged with regard to theories raised for the first time in post-trial briefs), affg. Riss v. Commissioner57 T.C. 469 and 56 T.C. 388 (1971). We disagree. As of yet, there has been no trial in this case. In our order of January 22, 1993, we made it clear that petitioner is not precluded from "raising any issue *185 with regard to the cost of its inventory that, properly, it may raise." Indeed, in its memorandum in opposition to the present motion, petitioner specifically addresses section 481(a), albeit in the context that, since respondent had not changed petitioner's method of accounting, no section 481 adjustment is appropriate. We are, thus, somewhat surprised to find petitioner now claiming that, if respondent is found to be changing petitioner's method of accounting, no section 481 adjustment is appropriate because an adjustment under section 481 comes as a surprise to petitioner. Moreover, the application of section 481 in the case of a change in method of accounting is patent from the statute. See sec. 481(a). Primo Pants Co. v. Commissioner, 78 T.C. at 726-728, is a case much relied on by petitioner. There, apparently, the Court took for granted the application of section 481, once a change in petitioner's method of accounting for inventories was established. Also, it is firmly established that, as a general rule, we do not look behind a deficiency notice to examine the procedure involved in respondent's making her determination. E.g., Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). *186 This case is dissimilar to Commissioner v. Transport Mfg. and Equip. Co., supra, and like cases, and we do not rule out sustaining the relevant portion of the deficiency on the basis of an adjustment under section 481(a). c. Factual Showing
An adjustment may be necessary under section 481(a) to prevent amounts from being duplicated or omitted solely on account of a change in method of accounting. Notwithstanding that we have concluded that respondent has changed petitioner's method of accounting with regard to inventories, whether an adjustment is necessary to prevent amounts from being duplicated or omitted requires a finding of fact. The necessity to find facts usually precludes summary judgment. Moreover, the present motion is not directed at whether a section 481 adjustment is necessary. Accordingly, we will not address that question here. Either party is free to move to set a date for trial or otherwise with regard to the section 481 issue. In anticipation of petitioner's questioning who bears the burden of proof with regard to that issue, see Rule 142(a), we now determine that petitioner bears the burden of proof. The question *187 of a change in petitioner's method of accounting pervades this whole matter of inventory valuation. See Primo Pants Co. v. Commissioner, supra at 716. The statutory notice and pleadings are sufficient to raise the issue of change in accounting method. Once that issue is raised, as stated before, the application of section 481 is patent. An appropriate order will be issued. Footnotes
*. On Sept. 3, 1992, this Court filed its previous opinion, T.C. Memo. 1992-504, in this case.↩
1. Based on a 1981 study, petitioner determined that certain spare parts inventory items, which were either slow moving or nonmoving (either few or no sales in the previous 3 months), should be marked down by 90 percent to reflect accurately their market value.↩
2. Cost of goods sold, slightly simplified, equals beginning inventory plus inventory purchased during the taxable period, minus ending inventory. Thus, the lesser the ending inventory, the greater the cost of goods sold.↩
3. In that status report, respondent concedes that opening inventory and closing inventory for the 1982 tax year (and, indeed, for each other tax year in issue) be computed in the same manner.↩
4. Although the parties do not specifically address this point, we think it clear that, where petitioner determined market value to be less than standard cost, petitioner valued inventory at market value for financial accounting purposes. Thus, for financial accounting purposes, petitioner valued inventory at the lesser of market or standard cost.↩
5. The 25-percent increase is intended to reflect the costs, among others, petitioner expected to incur to transport, insure, and handle such inventory.↩
6. It is not clear whether respondent means that petitioner always↩ valued inventory at standard cost, or only did so where such was less than market value, thereby using the lesser of market or standard cost method.
7. With respect to petitioner's taxable year ended Mar. 31, 1984, the tax return ostensibly indicates a cost of goods sold of $ 270,310,923, whereas the financial statement indicates a cost of goods sold of $ 269,960,923 (a $ 350,000 discrepancy). However, statement 3 to the tax return explains the additional $ 350,000 as an "INVENTORY ADJUSTMENT DUE TO INSTALLMENT SALE", thereby reconciling the two figures.↩
8. To be more precise, the inference would appear to be that, for both financial accounting and tax purposes, petitioner valued its inventory at the lower of standard cost or market.↩
9. In our earlier report, Hitachi Sales Corp. of America v. Commissioner, T.C. Memo. 1992-504↩, we stated that the joint stipulation of facts and attached exhibits establish that, during the taxable years at issue, in valuing inventory for purposes of its tax returns, petitioner valued closing inventory at the lower of cost or market. That, of course, was our conclusion, and not what petitioner had stipulated. Although we arrive at the same conclusion today, we do so only after fully reconsidering the issue.
10. We also observe that petitioner indicated on its Federal income tax returns for each year at issue that it used only the "lower of cost or market" method. Petitioner also fails to reconcile those statements with its argument herein.↩
11. The only portion of the Wilcox affidavit cited by petitioner for that proposition is par. 4, quoted supra↩ p. 10.
12. As observed earlier, petitioner has not even attempted to explain why its financial and tax records, purportedly computed under different methods of accounting, produced the same results (as to cost of goods sold and ending inventory) for each year at issue.↩
13. Petitioner makes an alternative argument that standard cost is an overstated (erroneous) value for its inventory and that respondent cannot adjust petitioner's spare parts inventory to an overstated value. Since petitioner made that argument, however, respondent has agreed that opening and closing inventory values for each year are to be computed under the same method of accounting. See infra. That agreement, we believe, removes much (if not all) of the force from petitioner's alternative argument. Also, the application of sec. 481, see infra↩, might well eliminate any advantage that petitioner were to gain should it succeed in its argument. For the reasons stated, we will not now further address petitioner's alternative argument.
14. The relevant portion of the notice of deficiency reads as follows: March 31, March 31, March 31, 1982
1983
1984
Correct Ending Inventory
$ 1,264,519
$ 1,379,689
$ 1,423,772
Ending Inventory per Return
420,000
420,000
420,000
Adjustment to Ending
$   844,519
$   959,689
$ 1,003,772
Inventory
Less-Prior Year's Adjustment
-0-
844,519
958,689
Disallowance
$   844,519
$   115,170
$    44,083
This determination is made pursuant to IRC Section 471 and the regulations promulgated thereunder, specifically Treas. Reg. Section 1.471-2(c)↩ which set forth the standards for substantiation of inventory valuation.