ROYAL OAK APARTMENTS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3282–62. Filed November 30, 1964.

*Rucker Todd*, for the petitioner.
*Sanford S. Newman*, for the respondent.

#### OPINION

FORRESTER, *Judge:* The year at issue before us is petitioner's fiscal year ending March 31, 1958. The sole remaining issue before us involves a claimed carryback net operating loss deduction to such year from petitioner's fiscal year ending March 31, 1961. The claimed loss item during fiscal 1961 is a corporation excise tax in the amount of $17,653.87 which was paid to the State of Tennessee during such year, but respondent contends it is not deductible by this cash basis petitioner because not paid by it.

Respondent determined deficiencies in petitioner's income taxes for fiscal 1958 in the amount of $6,829.70. This determination resulted

from the disallowance by respondent of several claimed carryback loss items from petitioner's fiscal 1961, all of which items respondent has now conceded with the sole exception of the excise tax mentioned above.

All of the facts have been stipulated and are so found. There follows a recitation of the facts necessary to an understanding of the case.

The petitioner was a corporation organized and operated in Tennessee. It owned and operated an apartment building in Nashville, Tenn.

Petitioner was operated on a fiscal year ending March 31 and on a cash receipts and disbursements method of accounting in keeping its books and in making its Federal income tax returns. For the year in issue its returns were filed with the district director of internal revenue, Louisville, Ky.

On September 5, 1959, petitioner, by the unanimous written action of all its shareholders, adopted a plan of complete liquidation as prescribed by section 337 of the Internal Revenue Code,[1] and pursuant to such plan had sold all of its operating assets and had realized a gain of $466,108.58 by December 31, 1959, which gain petitioner did not recognize for Federal income tax purposes in reliance upon section 337, *supra*. Respondent does not contest such nonrecognition.

The shareholders' resolution regarding the above plan of complete liquidation reads, in pertinent part:

That the stockholders elect to liquidate the corporation * * * and that the officers of the corporation proceed immediately after the sale of the assets of the corporation to liquidate the corporation completely. That upon receipt of proceeds of sale the obligations of the corporation be paid and the remainder of the proceeds be distributed to the stockholders in exchange for their certificates of stock, retaining only funds sufficient to pay claims, including contingent liabilities or expenses.

That upon the discharge of all claims the officers proceed to dissolve the corporation and wind up its affairs.

The State of Tennessee imposes an excise tax on corporate earnings from business done within that State. Such excise tax law, unlike the Federal income tax law, contains no nonrecognition provisions applicable to petitioner's gain described above; nevertheless, petitioner, for its fiscal year ended March 31, 1960, computed its net earnings for purposes of the Tennessee excise tax in the same manner as it had computed its taxable income for the purposes of Federal income taxes thus not recognizing to petitioner the aforesaid gain of $466,108.58. The Tennessee tax upon petitioner's net earnings for fiscal 1960

---

[1] All statutory references are to the Internal Revenue Code of 1954.

amounted to $17,479.07, and such tax was due and payable on July 1, 1960.[2]

Prior to July 26, 1960, petitioner distributed to its shareholders in complete liquidation substantially all of its assets, retaining only the funds necessary to meet its anticipated (less than $2,000) expenses of liquidation.

On July 26, 1960, the Department of Revenue of Tennessee sent petitioner a letter of transmittal and a tax bill for the additional excise tax (and interest thereon) which tax was due from petitioner because it had failed to include in its Tennessee excise tax return for fiscal 1960 the gain it had realized upon the sale of its operating assets. The letter of transmittal also noted that petitioner desired to surrender its corporate charter, called petitioner's attention to a surrender fee and franchise tax requirement, and then concluded: "When the above requirements have been met, we will notify the office of the Secretary of State that the corporation has complied with Tennessee franchise, *excise tax* laws and is entitled to have the surrender of its charter duly recorded." [Emphasis added.]

Petitioner immediately notified its shareholders of the above assertion of liability for the Tennessee excise tax and advised them that its not yet distributed assets were inadequate to pay the tax. A letter dated August 1, 1960, from petitioner's president and transmitted to the owners of 683 of petitioner's 1,000 shares of common stock stated in part: "I enclose Thermo-Fax copy of letter received from the Tennessee Department of Revenue covering assessment of excise tax * * *. I am withholding payment of this tax until I hear from you, and in fact, *we haven't that much money in the till so if it is paid the stockholders would have to be assessed.*"

When petitioner's plan of complete liquidation was adopted its issued and outstanding capital stock consisted of 1,000 shares of common stock which were owned of record as follows:

| Shareholder | Number of shares |
|---|---|
| John T. Mitchell | 183 |
| Joseph H. Mitchell | 183 |
| Marjorie H. Clarke | 134 |
| John T. Mitchell and John H. Mitchell, trustees | 500 |

[2] Interest for approximately 2 months was due the State of Tennessee by the time this tax was paid. This accounts for the increase to $17,653.87 and since neither party urges any differentiation in principle between tax and interest (and we discern none), we shall treat the latter figure as the Tennessee tax. The due date of the Tennessee tax is not stipulated but the provisions of the Tennessee Code are clear. Tenn. Code Ann.:

SEC. 67-2701. Corporations subject to tax—Rate.—All corporations, * * * organized under the laws of this state, * * * shall, without exception, pay to the commissioner of finance and taxation annually an excise tax, * * * equal to three and three-quarters per cent (3.75%) of the net earnings for their next preceding fiscal or calendar year, * * *

SEC. 67-2716. Date payment due—* * * The tax imposed shall be due and payable on July 1 of each succeeding year. * * *

The 500 shares owned of record by John T. Mitchell and Joseph H. Mitchell, as trustees, were owned beneficially by Surplus Sales Co., a division of First National Co., Nashville, Tenn.

John T. Mitchell, Joseph H. Mitchell, and Marjorie H. Clarke delivered to petitioner's president an $8,826.94 check dated August 24, 1960, payable to the Department of Revenue of the State of Tennessee and drawn on the Union Oil Co.'s account with the First Hardin National Bank.

John T. Mitchell, Joseph H. Mitchell, and Marjorie H. Clarke are brothers and sister and each had a drawing account with the Union Oil Co., a partnership. The $8,826.94 Union Oil Co. check described above was charged to the Union Oil Co. accounts of John T. Mitchell, Joseph H. Mitchell, and Marjorie H. Clarke in proportion to their stock ownership of the capital stock of the petitioner.

First National Co. sent petitioner's president an $8,826.93 check dated August 24, 1960, payable to the order of the Department of Revenue, State of Tennessee, and drawn upon the First National Co.'s account with the First National American Bank. On the face of such check there was written: "For ½ of Tenn. Excise tax and Int. assessed by State against Royal Oak Apts."

On August 26, 1960, petitioner sent the above-described checks (totaling $17,653.87) to the Franchise, Excise Tax Division of the Department of Revenue of Tennessee with a letter of transmittal on petitioner's letterhead as follows:

DEAR SIR:

Please be referred to your reference F.E.T., dated July 26, 1960.

We have added an additional month's interest and enclose the following checks:

First National Company_____ $8, 826. 93
Union Oil Company_____ 8, 826. 94

In your letter, you stated you were enclosing the necessary forms that must be executed in surrendering our charter. You failed to enclose these and I would appreciate your forwarding them at once so that we can wind up these affairs.

Very truly yours,

ROYAL OAK APARTMENTS, INC.

By August 1, 1960, the only open accounts on the petitioner's books were a cash account with a small balance (retained to pay the above-described anticipated expenses of liquidation) and a surplus account in the same amount. All of the other accounts had been closed, and the bookkeeper had been discharged. When the petitioner's president received the above-described checks from its shareholders and sent them to the Tennessee Department of Revenue no entries were made on petitioner's books.

Petitioner was dissolved under the laws of Tennessee on Septem-

ber 15, 1960, and during its taxable year ended March 31, 1961, petitioner had no gross income.

The parties have stipulated:

When the [two] checks [totaling $17,653.87] * * * were delivered by the petitioner's shareholders to the petitioner, those shareholders owed no debt to the petitioner, unless an indebtedness from the shareholders to the petitioner arose because the petitioner had distributed its assets to its shareholders without retaining funds sufficient to meet its liabilities. This is not intended as a stipulation that such an indebtedness did or did not arise because the petitioner had distributed its assets to its shareholders without retaining funds sufficient to meet its liabilities.

Respondent's sole contentions are that the form of the payment to Tennessee evidenced payment by shareholders rather than by petitioner, and that no indebtedness from the shareholders to the petitioner arose upon the distribution of assets, and that none existed when the Tennessee excise tax was paid. The parties' stipulation leaves open this ultimate fact.

It is respondent's position that petitioner, a cash basis taxpayer, is not entitled to deduct any expense (here the excise tax) which it did not pay, and that this expense was paid "by or on behalf of" the former shareholders as transferees, at a time when they owed no debt to petitioner.

Respondent urges in support of his position that the payment was not made with petitioner's own check, that no entries were made on petitioner's books regarding the payment of such tax, and that when the payment was made petitioner was "not a going concern," was a "mere shell," and "in a comatose state" and that therefore no debt existed from the shareholders to petitioner.

Respondent summarized his argument:

Respondent maintains that the Tennessee excise tax which was paid by or on behalf of the shareholders of the petitioner is not properly deductible by the petitioner, a cash basis taxpayer. Under well settled rules of tax accounting a taxpayer who computes his taxable income according to the cash receipts and disbursements method is not entitled to a deduction for an expense which it did not pay.

Petitioner does not dispute the proposition that a cash basis taxpayer cannot deduct an expense which it did not pay, but contends simply that this excise tax was paid by petitioner both in form and in substance. We agree with petitioner.

It is true that in form the payment was not made with petitioner's own check; however, one of the checks which was used clearly identified petitioner, the Tennessee tax, and the purpose of the payment. Also, both checks were drawn at petitioner's request, and were sent, not to the State, but to petitioner which thereupon sent them to the State together with its own letter of transmittal.

Respondent characterizes petitioner's action as that of a mere agent for the shareholders, forwarding the checks on for the benefit of, and on behalf of, the shareholders.

Petitioner views the transaction as payment of the tax by petitioner, using property (choses in action) furnished it by the shareholders.

In support of its position, petitioner urges as an analogy the case of a cash basis taxpayer who obtains a cashier's check from a bank, the check payable directly to the taxpayer's creditor. In such a situation the taxpayer would have purchased the check from bank or would have incurred an obligation to bank in exchange for the check, and it could not be disputed that taxpayer had paid his own debt to his creditor by handing over the cashier's check. *Commissioner* v. *Court Holding Co.*, 324 U.S. 331; *Old Colony Tr. Co.* v. *Commissioner*, 279 U.S. 716; *Hazel McAdams*, 15 T.C. 231, affd. 198 F. 2d 54 (C.A. 5). Petitioner argues that when it made the excessive liquidating distributions to its shareholders which left it with inadequate funds to pay this then-existing tax obligation, an indebtedness arose in its favor, from the shareholders, and measured by such excess of the distribution. If this is so, the analogy is complete.

A threshold question for our consideration is whether petitioner was still in existence when the payment to Tennessee was made. It is clear that it was, both for Federal income tax purposes, and under the express provisions of the Tennessee statutes. Section 1.6012–2 (a) (2), Income Tax Regs., provides:

A corporation is not in existence after it ceases business and *dissolves, retaining no assets* * * *. If the corporation has valuable claims for which it will bring suit * * * [while winding up its affairs] * * * it has retained assets and therefore continues in existence. * * * [Emphasis added.]

This petitioner had sold its physical assets by December 31, 1959, and made the distributions to shareholders by July 26, 1960, but the amount of the excise tax to Tennessee was fixed by March 31, 1960, and it was due and payable on July 1, 1960. It follows (discussion *infra*) that petitioner had valuable claims against the shareholders when the tax was paid. In addition, it is stipulated that petitioner still retained a small cash account on August 1, 1960, when it made demand on its shareholders, and that petitioner was not formally dissolved until September 15, 1960. Also, the corporate resolution adopting the plan of liquidation expressly provided that petitioner's obligations be paid before distribution of the remainder to shareholders and before the corporation be dissolved.

Section 48–514, Tenn. Code Ann., provides that the filing of a certificate of dissolution in the office of the secretary of state shall operate as a surrender of all corporate franchises and privileges, to annul the charter, etc. Section 48–515 provides:

Tax clearance on dissolution.—Surrender of the charter shall not become effective until the commissioner of revenue of Tennessee has certified to the secretary of state that all corporation taxes have been paid in full to date of surrender. * * *

We conclude from all of the above that petitioner was still in existence when this tax was paid.

Turning now to the question of the existence of an indebtedness from shareholders to petitioner because of the circumstances surrounding the distributions, it seems clear to us that such distributions were improper and unlawful and that such indebtedness did arise. Section 48–207, Tenn. Code Ann., provides that there shall be no reduction of corporate capital, by distributions to stockholders or otherwise, unless the corporation's remaining assets shall have a value "in excess of * * * the debts and liabilities of the corporation." Section 48–211 provides that dividends may not be paid otherwise than from net earnings or surplus of assets over liabilities, including capital. Section 48–212, captioned "Unlawful dividends and withdrawals," provides:

The directors of a corporation shall not make dividends except as provided in § 48–211, nor shall they divide, withdraw or in any way pay to the stockholders or any of them any part of the capital of the corporation or decrease its capital except as provided by this chapter; * * *

None of the above provisions of the Tennessee Code are unusual or unique. They are the expected provisions designed to protect the rights of the corporation's creditors, and they were violated in this case when the distributions were made leaving the Tennessee excise tax unpaid.

The excess of this distribution (here measured by the amount of the Tennessee excise tax) was directly recoverable by petitioner and thus petitioner's demand upon its shareholders was meaningful. Section 48–516, Tenn. Code Ann., provides:

Liquidation by directors and officers.—The officers and directors of said corporation in charge of its business and property at the time of such dissolution shall hold the assets thereof as trustees for the benefit of the creditors and stockholders of the corporation. * * * and such trustees shall have power to collect the debts due the corporation, sell such property of the corporation as may be necessary to pay its debts, and distribute the *remaining* assets, after the payment of debts and necessary expenses of administration, among the stockholders; and all suits necessary and proper to be brought in order to effect a settlement of the affairs of said corporation may be brought by said trustees *in the name of the corporation,* * * * [Emphasis added.]

A parallel situation was involved in *Whaley* v. *King,* 141 Tenn. 1, 206 S.W. 31. There an insolvent Tennessee corporation had wrongfully reduced its capital by purchasing its own shares from a stockholder.

In holding that the corporation was entitled to recover the purchase price from the stockholder and that he was not entitled to offset an obligation running to him from the corporation, but was obliged to make his claim along with other creditors, the court said (p. 32):

If such a purchase [unlawful reduction of capital] is attempted, the corporation may recover of the stockholder the amount paid him on account of the transaction, * * *

\*    \*    \*    \*    \*    \*    \*

Corporate assets are a trust fund to the extent that creditors are entitled to payment of their debts before any distribution of such property is made among stockholders. * * *

The court then likened unauthorized or wrongful redemption with failure to pay original subscription price of stock and said:

In each case there is an obligation to the same trust fund. The two obligations are of the same character. Corporate creditors have a right to demand that all stockholders pay in the amount of their subscriptions to capital stock. Such creditors have an equal right to demand that such sums so paid in be allowed to remain by the stockholders as security for the debts of the corporation.

See also the case of *Hazel McAdams, supra.* There a deductible expense of a cash basis taxpayer was paid directly by another. We held that this was tantamount to a loan to taxpayer at that time and denied him a deduction in a later year when he repaid the loan. The circumstances are analogous. The important similarities to the instant case are that the deductible expense was taxpayer's obligation and its payment by another either created an equal obligation from taxpayer to payor or satisfied an equal obligation from payor to taxpayer. We said (p. 235):

When Luse advanced money to discharge petitioner's pro rata share of the drilling and development expenses in 1941, he in effect loaned petitioner the funds with which to make payment and petitioner used them for this purpose. The fact that Luse paid the amounts in question without the funds going through the hands of petitioner does not affect the status of these payments as loans. *Consolidated Marble Co.*, 15 B.T.A. 193; *E. Gordon Perry*, 28 B.T.A. 497. Expenses paid with borrowed funds are deductible by a taxpayer on the cash basis in the year in which they are actually paid, and the deduction thereof can not be deferred until a later year when repayment of the borrowed funds is made by the taxpayer. *Robert B. Keenan*, 20 B.T.A. 498; *Ida Wolf Schick*, 22 B.T.A. 1067; *Crain* v. *Commissioner*, 75 Fed. (2d) 962. Our conclusion is, therefore, that petitioner should have deducted the expenses here involved in 1941 when they were paid by Luse in his behalf, and not in 1944 and 1945, when he repaid Luse for his advances.

It may well be that a wrongful distribution such as we have here also creates a cause of action in favor of creditors and directly against the shareholder distributees. The case of *Thomas S. Marr* v. *The Bank of West Tennessee et al.*, 44 Tenn. 471, and section 48–514, Tenn.

Code Ann.,[3] indicate that this may be so on the theory of a charge of trust on the distributed property. But this does not detract from the right and duty of the corporation (petitioner) to make the recovery directly.

Respondent would have us attach great significance to the fact that no formal entries were made on petitioner's books when this excise tax was paid. The facts were that at such time all of petitioner's accounts had been closed except a small cash account and a balancing surplus account and petitioner's bookkeeper had already been discharged. Under such circumstances we would have attached very little weight to a formal book entry and we feel that the lack of any formal entry is no more significant.

Respondent also shows that in its amended income tax return for its final year petitioner stated that since most of its funds had been distributed to shareholders, they had, "as 'transferees' paid the tax." Respondent infers that petitioner should be bound by this statement, but respondent ignores the fact that on this same return petitioner claimed the payment as a proper corporate deduction. We look upon this as equally significant and will not treat the word "transferees" as here used as a term of art.

Respondent has cited three cases as being in support of the proposition that a cash basis taxpayer is not entitled to deduct expenses which were paid for it by another. They are *Citizens Nat. Trust & Savings Bank* v. *Welch*, 119 F. 2d 717 (C.A. 9); *Doggett* v. *Commissioner*, 275 F. 2d 823 (C.A. 4); and *Arthur L. Kniffen*, 39 T.C. 553. None of these cases are in point because, under the facts of each, the expenses which were paid were no longer obligations of taxpayer, but by the time of payment had become obligations of the payor either by express or implied agreement or by operation of law. In the instant case there was no such agreement at the time of the distributions to the shareholders and the Tennessee tax continued to be an obligation of petitioner.

We conclude from all of the foregoing that this Tennessee excise tax was paid by petitioner both in form and in substance.

*Decision will be entered for the petitioner.*

---

[3] We note, however, that the *Marr* case denominates the obligation as the corporation's (not the distributees') debt, and that while sec. 48–514 provides for satisfaction of creditors' debts out of corporate assets it also provides that the corporation shall continue to exist so long as may be necessary for that purpose. In *Marr* the court said (p. 479):

"The doctrine, that the assets of an insolvent or dissolved banking, or other monied corporation, constitutes a pledge or trust fund for the payment of the *corporation* debts, is now so firmly settled, upon the plainest principles of reason and justice, as well as authority, that it cannot be shaken, or brought into doubt. The assets of such an institution are always liable for its debts; * * * if they have been distributed among stockholders, * * * leaving debts of the corporation unpaid, such holders take the property charged with the trust, in favor of the corporation creditors; and a Court of Equity will follow the property, and enforce and compel its *application to the corporation debts.*" (Citing cases. Emphasis added.)