WILFORD E. THATCHER AND ESTELLA M. THATCHER, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 5391-69—5393-69.   Filed October 4, 1973.

*Leo S. Meysing*, for the petitioners.
*Gary R. DeFrang*, for the respondent.

SIMPSON, *Judge:* In these consolidated cases, the respondent determined the following deficiencies in the petitioners' Federal income taxes:

| Petitioners | Docket No. | Taxable year | Deficiency |
|---|---|---|---|
| Wilford E. and Estella M. Thatcher | 5391-69 | 1963 | $31,344.82 |
|  |  | 1964 | 648.36 |
| Teeples & Thatcher Contractors, Inc | 5392-69 | 1963 | 42,051.45 |
|  |  | 1964 | 2,486.20 |
| Karl D. and Iva A. Teeples | 5393-69 | 1963 | 46,716.96 |

Concessions having been made by the parties, the issues remaining for decision are: (1) Whether the liabilities transferred to a corporation as a part of an exchange under section 351 of the Internal

---

[1] Cases of the following petitioners are consolidated herewith: Teeples & Thatcher Contractors, Inc., docket No. 5392-69; Karl D. Teeples and Iva A. Teeples, docket No. 5393-69.

Revenue Code of 1954[2] exceeded the basis of the assets acquired by such corporation in such exchange so that section 357(c) is applicable; (2) what is the basis of the stock acquired by the transferor in such exchange; and (3) whether the respondent properly disallowed deductions to the corporation for salary payments made to Karl D. Teeples.

### FINDINGS OF FACT [3]

Wilford E. and Estella M. Thatcher are husband and wife who, at the time of filing the petition herein, resided in Portland, Oreg. They filed joint United States individual income tax returns for the taxable years 1963 and 1964, on the cash receipts and disbursements method of accounting, with the district director of internal revenue, Portland, Oreg.

Karl D. and Iva A. Teeples are husband and wife who, at the time of filing the petition herein, resided in Portland, Oreg. They filed a joint United States individual income tax return for the taxable year 1963, on the cash receipts and disbursements method of accounting, with the district director of internal revenue at Portland, Oreg.

Teeples & Thatcher Contractors, Inc., is an Oregon corporation having its principal place of business at the time of filing its petition herein at 8850 S.E. Otty Road, Portland, Oreg. Its United States corporation income tax returns for the period February 1, 1963, to December 31, 1963, and the taxable year 1964, prepared on the cash receipts and disbursements method of accounting, were filed with the district director of internal revenue at Portland, Oreg.

On March 31, 1956, Wilford E. Thatcher and Karl D. Teeples (hereinafter sometimes referred to as Thatcher and Teeples, respectively), formed a general partnership to engage in business as general contractors under the name of Teeples & Thatcher Co. (hereinafter sometimes referred to as the partnership). On August 1, 1960, the partnership purchased farm and cattle ranching properties.

From August 1, 1960, until February 1, 1963, the partnership owned and operated the contracting business and the farm and cattle ranching business. From February 1, 1963, until June 30, 1963, the partnership operated the farm and cattle ranching enterprise as its sole business activity. The partnership maintained its books and filed its partnership returns on the cash receipts and disbursements method of accounting.

In January 1963, Teeples & Thatcher Contractors, Inc. (hereinafter referred to as the corporation), was organized. On February 1, 1963,

---

[2] All statutory references are to the Internal Revenue Code of 1954.

[3] Since Judge Quealy conducted the trial and observed the witnesses, the Findings of Fact in this case are those made by him.

the partnership transferred to the corporation all of the assets and liabilities of the general contracting business in exchange for all 500 shares of the authorized stock of the corporation and the assumption by the corporation of the liabilities of the partnership.

The assets transferred to the corporation as of February 1, 1963, included the following:

*Current assets*

| | | | |
|---|---|---|---|
| Cash: | | | |
| First National Bank | | | $16,191.28 |
| Cash advances—employees | | | 250.00 |
| Loan receivable | | | 100,000.00 |
| Prepaid items: | | | |
| Insurance | $1,957.23 | | |
| Interest | 375.00 | | |
| Plan deposits | 146.00 | | |
| Reserve for taxes and insurance | 1,795.13 | 4,273.36 | |
| Total current assets | | | 120,714.64 |

*Fixed assets*

| | | | |
|---|---|---|---|
| Land | | | 2,819.00 |
| Building | $47,105.99 | | |
| Less: Depreciation | 7,325.49 | 39,780.50 | |
| Office equipment | 4,895.55 | | |
| Less: Depreciation | 3,215.38 | 1,680.17 | |
| Machinery and equipment | 221,879.18 | | |
| Less: Depreciation | 110,931.40 | 110,947.78 | |
| Neon sign | 391.29 | | |
| Less: Depreciation | 382.15 | 9.14 | |
| Automotive vehicles | 67,297.70 | | |
| Less: Depreciation | 35,184.56 | 32,113.14 | |
| Cessna #310 Skyline | 43,379.78 | | |
| Less: Depreciation | 27,871.82 | 15,507.96 | 200,038.69 |

*Deferred expenses*

| | |
|---|---|
| Prepaid rent | 2,320.00 |
| Properties | 325,892.33 |

The amounts of the liabilities assumed by the corporation as of February 1, 1963, included the following:

*Notes and mortgages payable*

| | |
|---|---|
| First National Bank | $256,040.52 |
| Miscellaneous accrued payroll taxes | 8,154.00 |
| Liabilities | 264,194.52 |

In addition, as part of the same transaction, the partnership transferred to the corporation unrealized receivables amounting to $317,146.96, consisting of partially completed construction contracts, and the corporation assumed accounts payable amounting to $164,065.54, consisting of costs incurred on account of said contracts. The unrealized receivables and accounts payable taken over by the corporation had not, prior to the date of transfer, been reflected in the computation of income and expenditures by the partnership for purposes of taxation.

After February 1, 1963, the corporation continued in business as general contractor and, in the course thereof, during 1963 paid all of the accounts payable assumed by it, and deducted said expenditures as business expenses on its United States corporation income tax return for the taxable period February 1, 1963, to December 31, 1963. Additionally, the corporation, in computing its taxable income for this period, reported as gross income all cash receipts thereafter collected by it, including all amounts collected in respect to the partnership unrealized receivables transferred to the corporation by the partnership.

In May 1963, the partnership distributed 300 shares of stock of the corporation to Teeples and distributed 200 shares of this stock to Thatcher. In August 1963, the corporation redeemed the 300 shares of the corporation stock owned by Teeples for $42,500. In June 1964, Thatcher sold 90 shares of stock of the corporation to Harry Pajutee for $22,500 and 20 shares of its stock to Lester Thatcher for $5,000.

The respondent has determined that Teeples and Thatcher, as partners, realized a taxable gain under section 351(a) and (b) and section 357 to the extent that the total liabilities assumed by the corporation exceeded the adjusted basis of the partnership in the assets or property transferred to the corporation. Consistent therewith, the respondent further determined that the stock of the corporation had a zero basis in the hands of the partners for the purpose of computing the gain realized by Teeples and Thatcher, respectively, on the subsequent redemption or sale of such stock.

Teeples was also manager of the partnership farm and cattle ranching business and devoted a substantial part of his time to this activity from the time the partnership acquired these properties until he sold his partnership interest to the Thatchers in June 1963. The farm and ranching business of the partnership was located approximately 350 miles from Portland, Oreg., and encompassed aproximately 1,400 acres.

In March 1963, the corporation and Teeples entered into an agreement which provided that Teeples was to be employed by the corporation from March 1, 1963, until October 31, 1969, a period of 6 years and

8 months for a total salary of $100,000 payable in monthly installments of $1,250. Teeples was to serve in an executive capacity with the corporation in matters relating to the management and administration of the corporation's overall construction activities, particularly with respect to matters involving the bidding, planning, negotiating, and supervision of contracts relating to construction jobs.

During the period March 1, 1963, to August 1, 1963, Teeples rendered services for the corporation, such as visiting prospective clients, negotiating jobs, and setting up contracts.

In June 1963, Teeples received a mission call from his church, the Church of Jesus Christ of Latter Day Saints, which he duly accepted, to serve as an adviser to the church in Formosa for construction activities it carried on there. Sometime in August 1963, Teeples left the United States to travel to Formosa to serve his mission and did not return to this country for approximately 3 years.

On July 22, 1963, a special joint meeting of the stockholders and directors of the corporation was held because of the mission call Teeples had received. At this meeting, it was decided that the corporation would continue to make payments to Teeples pursuant to the employment agreement of March 1963. During the period Teeples was in Formosa, the corporation continued to make the monthly payments to him specified in the agreement of March 1963. No services were actually rendered by Teeples to the corporation during the period he was in Formosa.

During the taxable period February 1, 1963, to December 31, 1963, and the year 1964, the corporation made total payments of $14,700 and $15,000, respectively, to Teeples and claimed deductions for these amounts in computing its taxable income. The respondent has disallowed $5,950 of the amount claimed for the period from February 1 to December 31, 1963, and $12,000 of the amount claimed for the year 1964.

OPINION

First, we must decide the principal issue of whether the liabilities transferred to, and assumed by, the corporation in a section 351 exchange exceeded the adjusted basis of the assets transferred to the corporation.

Section 351(a) provides that where property is transferred to a corporation solely in exchange for stock or securities of such corporation, and immediately after the exchange the transferor is in control of the corporation, no gain or loss shall be recognized on the exchange. However, section 357(c)(1) provides that in a section 351 exchange—

if the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject, exceeds the total of the adjusted basis

of the property transferred pursuant to such exchange, then such excess shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be.

The parties agree that the liabilities assumed by the corporation, excluding accounts payable, amounted to $264,194.52, and that the total adjusted basis of the assets transferred, other than accounts receivable, was $325,892.33. They disagree on the treatment to be accorded the accounts receivable and accounts payable. The respondent contends that the adjusted basis of the accounts receivable was zero, that the accounts payable of $164,065.54 were liabilities, and that, therefore, the amount of the liabilities assumed, $428,260.06, exceeded the total adjusted basis of the assets transferred, $325,892.33, by $102,367.73. On the other hand, the petitioners contend that the adjusted basis of the accounts receivable is equal to the amount of the accounts payable, $164,065.54, and that, therefore, the amount of the liabilities assumed, $428,260.06, did not exceed the total adjusted basis of the assets transferred, $489,-957.78. Alternatively, they contend that accounts payable of a cash basis taxpayer are not liabilities within the meaning of section 357(c), and that, therefore, even if the accounts receivable had a zero basis, the amount of liabilities assumed within the meaning of section 357(c), $264,194.52, did not exceed the total adjusted basis of the assets transferred, $325,892.33.

In *Peter Raich*, 46 T.C. 604 (1966), the assets of a sole proprietorship, including accounts receivable, were transferred to a corporation in a section 351 transaction, and the corporation assumed the liabilities, including the accounts payable, of the sole proprietorship. The issue was the same as in this case, and this Court concluded that the basis of a cash method taxpayer in accounts receivable was zero, treated the accounts payable as liabilities, and found that the liabilities assumed by the corporation exceeded the basis of the assets transferred.

The petitioners take the position that the *Raich* case is distinguishable because that case involved a transfer of assets by a sole proprietor, whereas the present case involves a transfer of assets by a partnership. They argued at great length that section 751 and the regulations thereunder provide a different basis for the accounts receivable of a partnership. Section 751(c) provides that for the purposes of subchapter K, the term "unrealized receivables" includes accounts receivable "to the extent not previously includible in income under the method of accounting used by the partnership." Section 1.751–1(c)(2) of the Income Tax Regulations provides:

(2) The basis for such unrealized receivables shall include all costs or expenses attributable thereto paid or accrued but not previously taken into account under the partnership method of accounting.

The petitioners interpret such regulation to mean that, for all purposes throughout the Code, the accounts receivable of a partnership reporting its income on the cash receipts and disbursements method of accounting have a basis equal to the accounts payable attributable to such accounts receivable. They, therefore, conclude that their accounts receivable had a basis of $164,065.54.

The petitioners' argument overlooks the fact that section 751 has an altogether different purpose. That section has been referred to as the "collapsible" partnership provision. See, e.g., S. Rept. No. 1616, 86th Cong., 2d Sess., p. 77 (1960); S. Rept. No. 1622, 83d Cong., 2d Sess., p. 98 (1954); Willis, Partnership Taxation, sec. 20.08 (1971). It was enacted in response to cases such as *Swiren* v. *Commissioner*, 183 F. 2d 656 (C.A. 7, 1950), reversing a Memorandum Opinion of this Court, certiorari denied 340 U.S. 912 (1951). In *Swiren*, the taxpayer sold his partnership interest in a law firm, whose assets consisted largely of uncollected or unbilled legal fees, and the Court held that the entire gain from such sale was capital gain, even though the receipt of the legal fees by the partnership would have given rise to ordinary income. Section 751(a) seeks to prevent such a "conversion of potential ordinary income into capital gain" (S. Rept. No. 1622, *supra* at p. 98), and it provides that:

(a) SALE OR EXCHANGE OF INTEREST IN PARTNERSHIP.—The amount of any money, or the fair market value of any property, received by a transferor partner in exchange for all or a part of his interest in the partnership attributable to—

(1) unrealized receivables of the partnership, or

(2) inventory items of the partnership which have appreciated substantially in value,

shall be considered as an amount realized from the sale or exchange of property other than a capital asset.

To assure that the rules of section 751 with respect to the transfer of partnership interests are not avoided by distributions of property to a partner, other sections of subchapter K provide special rules for the treatment of "section 751 property," including unrealized receivables, which is distributed to a partner. Secs. 731, 732, 735, 736, 741.

The regulations under section 751 are designed to provide a method of determining how much of the sale price of a partnership interest should be allocated to the "property other than a capital asset" and the amount of gain or loss which should be attributable to the transfer of such property. Thus, such regulations provide rules for measuring the amount of ordinary income to be recognized on the sale of a partnership interest. Such rules are also applicable under the other provisions of subchapter K relating to the distribution of section 751 property to a partner. It should be emphasized that the regulations under section 751 are designed to measure income, and not to establish gen-

eral basis rules. Similarly, in *Herman Glazer*, 44 T.C. 541, 546 (1965), this Court was required to determine whether the proceeds of the sale of a partnership interest should be treated as ordinary income, and its statement (p. 549) concerning basis related only to the determination of the proper amount of such income.

On the contrary, section 357 deals with the tax consequences of the transfer of liabilities to a corporation in a transaction subject to section 351. In *United States* v. *Hendler*, 303 U.S. 564 (1938), it was held that if a corporation assumed a liability of the transferor, it was as if the corporation had made the payment to the transferor. The predecessor of section 357(a) was enacted to change the rule established by *Hendler;* thus, liabilities could be transferred to a corporation in a transaction under section 351 without the transferor being taxed thereon. However, when that rule was enacted, Congress also enacted the limitation now appearing in section 357(b) ; that is, if the principal purpose of the transfer of the liabilities was to avoid tax or was not a bona fide business purpose, the rule of section 357(a) was not applicable. Yet, Congress was apparently not satisfied with the results of the limitation set forth in section 357(b), and consequently, in 1954, it enacted the rule of section 357(c). That provision established a mechanical test; whenever the liabilities transferred exceed the basis of the property transferred, the excess is taxable. The provision is applicable irrespective of the value of the property transferred or of whether the transferor realized a gain or income on the transfer. Thus, in view of the altogether different purposes of sections 751 and 357(c), there is no reason to extend to a transaction under section 357(c) the rules developed under section 751.

Moreover, if we were to adopt the petitioners' argument that section 751 and the regulations thereunder are applicable when a partnership transfers its assets and liabilities to a corporation, such a transfer by a partnership would have different tax consequences than a similar transfer by a proprietor. See *Peter Raich*, 46 T.C. 604 (1966). Such a difference in tax treatment would be irrational, and its irrationality constitutes a persuasive reason for not reaching such a result. Nor is there any merit in the petitioners' reliance on section 771, for that section merely establishes the effective dates of the provisions of subchapter K; it does not define what transactions are subject to section 751. Because we have found that the regulations under section 751 are not applicable in this case, we need not decide whether the petitioners' interpretation of the wording of section 1.751–1(c) (2) is correct.

The petitioners also challenge our holding in *Raich* that accounts receivable have a zero basis in the hands of a taxpayer using the cash method of accounting. However, in the case of a taxpayer using that

method of accounting, it is generally accepted that the accounts receivable do have a zero basis. *Peter Raich, supra* at 610–611; see 3 Mertens, Law of Federal Income Taxation, sec. 20.159 fn. 9 (1972); 3 Rabkin & Johnson, Federal Income, Gift and Estate Taxation, sec. 31.05 (1973); White, "Sleepers that Travel with Section 351 Transfers," 56 Va. L. Rev. 37, 41 (1970); cf. *Velma W. Alderman*, 55 T.C. 662 (1971). Since the accounts payable represent expenses not yet paid, there is no reason to allow a deduction or otherwise take them into consideration in computing the income of a cash method taxpayer prior to their payment. See sec. 1.461–1(a)(1), Income Tax Regs. Furthermore, the accounts receivable should be included in income when collected, and although the petitioners suggest that the basis of the receivables could be computed as if they had been acquired by purchase, there is no authority for such a proposition. Accordingly, we hold that the accounts receivable transferred by the petitioners to the corporation had a zero basis.

In the alternative, the petitioners point to the decision of the Second Circuit in *Bongiovanni* v. *Commissioner*, 470 F. 2d 921 (1972), reversing a Memorandum Opinion of this Court, and urge us to hold that accounts payable should not be treated as liabilities within the meaning of section 357(c). In *Bongiovanni*, the circuit court believed that if accounts receivable and accounts payable are transferred to a corporation, it would frustrate the purpose of section 351 to hold that the transferor was taxable on the accounts payable under section 357(c); accordingly, the court held (p. 924) that liabilities under section 357(c) meant "liens in excess of tax costs, particularly mortgages encumbering property transferred in a Section 351 transaction." The petitioners appear to recognize that the *Bongiovanni* interpretation of liabilities is too narrow, but they suggest that the term should be construed to include only mortgages and other "capital loans."

The circuit court's holding in *Bongiovanni* cannot be reconciled with the language of section 357(c); such provision is applicable when "the sum of the amount of the liabilities assumed, plus the amount of the liabilities to which the property is subject" exceeds the basis of the property transferred. If the term "liabilities" was limited to liens, there would be no need to refer, in section 357(c), to liabilities which are assumed as separate from those to which the transferred property is subject. Moreover, in *N.F. Testor*, 40 T.C. 273 (1963), affd. 327 F. 2d 788 (C.A. 7, 1964), this Court and the Seventh Circuit both specifically held that section 357(c) applied to a situation in which the only liabilities transferred were unsecured liabilities.

The Senate Finance Committee report, accompanying the enactment of section 357(c), stated:

if an individual transfers, under section 351, property having a basis in his hands of $20,000, but subject to a mortgage of $50,000, to a corporation controlled by him, such individual will be subject to tax with respect to $30,000, the excess of the amount of the liability over the adjusted basis of the property in the hands of the transferor. [S. Rept. No. 1622, 83d Cong., 2d Sess., p. 270 (1954).]

Thus, the operation of the rule is illustrated by a situation involving a secured liability. However, there is no other indication in the legislative history that the term liabilities should be confined to secured liabilities. Furthermore, there is no reason to believe that Congress intended for the rule not to apply if the transferor secured funds by means of an unsecured loan and transferred both the assets and that obligation to a new corporation. Nor is there any reason to believe that section 357(c) was intended never to apply to a transfer of accounts payable. For example, if a proprietor transfers accounts payable in excess of accounts receivable and no other assets, he is relieved of the necessity of paying off the excess of liabilities, and Congress may have intended for section 357(c) to apply in such a situation.

We recognize that if section 357(c) is applied when a proprietor or partnership transfers to a corporation a going business, including accounts receivable, accounts payable, and other assets, it may appear to undermine the purpose of section 351. Yet, there is no support for adopting the definition suggested by the petitioners, and we can find no rational basis for giving the term "liabilities" a restrictive meaning. Under these circumstances, we must assume that Congress intended for the term "liabilities" to have its ordinary meaning. *United States* v. *Stewart*, 311 U.S. 60 (1940).

Nor can we remake the transaction for the parties. *Weiss* v. *Stearn*, 265 U.S. 242, 254 (1924); *Paula Construction Co.*, 58 T.C. 1055 (1972), affirmed per curiam 474 F. 2d 1345 (C.A. 5, 1973). If the partnership had withheld accounts payable and an equivalent amount of the accounts receivable, the tax consequences would have been altogether different. However, the accounts payable and the accounts receivable were all transferred to the corporation, and since the corporation has collected the accounts receivable and paid the accounts payable, we cannot ignore such facts and determine the tax consequences for the corporation as if such transfer had not taken place. Thus, we hold that the accounts payable transferred by the petitioners to the corporation must be treated as liabilities under section 357(c). The resolution of the problem illustrated by this case will require Congress and the Administration to reconsider the mechanical test adopted in 1954 and to decide what rule should be applied to a transfer of liabilities; it will then be necessary for them to take appropriate legislative or administrative action.

The petitioners finally contend that the issue of whether income was recognized on the transfer of assets to the corporation is not before us, because such issue was conceded by the respondent in his answer. We do not interpret the answer as having conceded such issue. Moreover, in his opening statement, counsel for the petitioners referred to such issue as the "essential" issue of the trial, and at trial, the petitioners presented evidence on such issue. In their briefs, the parties have extensively argued the issue. Under such circumstance, it is clear that the issue is properly before us. See, e.g., *Ross Glove Co.*, 60 T.C. 569 (1973); *Nat Harrison Associates, Inc.*, 42 T.C. 601, 617–618 (1964).

In view of our holding as to the applicability of section 357(c), the partnership's adjusted basis in the stock which it received from the corporation in exchange for the transfer of assets was zero. Pursuant to section 358, the basis of the stock so acquired is computed by increasing the partnership's adjusted basis in the transferred assets ($325,892.33) by the gain recognized on the transfer ($102,367.73) and by reducing such total by the amount of the liabilities assumed by the corporation and those to which the transferred property was subject ($428,260.06).

It remains for decision [4] whether respondent erroneously determined that not more than $250 of a total of $1,250 per month paid by the corporation to Teeples during his absence in Formosa was allowable as an ordinary and necessary expense under section 162(a)(1).[5]

Briefly, the facts are that Teeples and the corporation entered into a contract whereby in consideration of specified services, the corporation would pay Teeples $1,250 per month. Thereafter, in accordance with the custom of his church (Church of Jesus Christ of Latter Day Saints), Teeples was called upon to undertake a mission for the church in Formosa. He accepted the call. Thereupon the board of directors of the corporation voted to continue his salary during his absence. The respondent has determined that at least to the extent of $1,000 per month, the amounts paid to Teeples were not an allowable deduction under section 162(a)(1).

The petitioner has the burden of proof that the amount in question constituted reasonable compensation within the meaning of section 162(a)(1). Petitioner failed to do so. Teeples performed no services

---

[4] Since the decision in this issue turns on the evaluation of the evidence in the case, we have adopted Judge Quealy's opinion with respect to it.

[5] SEC. 162. TRADE OR BUSINESS EXPENSES.

(a) IN GENERAL.—There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including—

(1) a reasonable allowance for salaries or other compensation for personal services actually rendered;

for the corporation while in Formosa. With respect to what services he may have performed prior to leaving, the testimony was vague and general, if not contradictory. The corporation was under no obligation to Teeples and the fact that the corporation elected to continue his salary, although commendable, did not give rise to an allowable deduction.

In accordance with the foregoing,

*Decisions will be entered under Rule 50.*

Reviewed by the Court.

———

QUEALY, *J.*, dissenting and concurring: I must disagree with the opinion of the majority with respect to the application of section 357(c) to the facts in this case.

With respect to this issue, the opinion of the majority follows the line of prior decisions of this Court in *N. F. Testor*, 40 T.C. 273 (1963), affd. 327 F. 2d 788 (C.A. 7, 1964), and *Peter Raich*, 46 T.C. 604 (1966). That view was rejected by the U.S. Court of Appeals for the Second Circuit in *Bongiovanni* v. *Commissioner*, 470 F. 2d 921 (C.A. 2, 1972), reversing T.C. Memo. 1971–262. While it was my decision that was reversed, I am in full accord with the decision of the appellate court in the *Bongiovanni* case.

There are inherent problems in applying section 357(c) in the case of a taxpayer whose books and records are kept on the cash basis of accounting where there has been a transfer of the business in "midstream." Since neither all of the income actually earned nor all of the expenses actually incurred may be reflected on the books of such taxpayer, the transferor will not have fully accounted for its income and deductions. Where the transfer qualifies for nonrecognition under section 351, the transferee is required to pick up any unreported income and receives the benefit of any deductions attributable thereto which have not been paid by the transferor. Under the opinion of the majority, however, the allowance of the deduction to the transferee is offset by the inclusion of a corresponding amount in the gain taxable to the transferor under section 357(c). This has troubled the courts. *Bongiovanni* v. *Commissioner, supra; Peter Raich, supra.*[1]

As was aptly pointed out by the appellate court in *Bongiovanni* v. *Commissioner, supra,* section 351 was originally enacted to provide for the simple incorporation of a sole proprietorship or partnership for purposes of continuing the business in that form without the realization of any taxable gain or loss. Where the liabilities assumed in that type of transaction are reflected in the transferor's method of account-

---

[1] A similar harsh result may follow where a cash basis taxpayer becomes bankrupt. *Henry C. Mueller,* 60 T.C. 36 (1973).

ing, it is only logical to take such liabilities into account in determining the consideration received.[2]

On the other hand, where neither the liabilities in question nor the corresponding receivables have been taken into account under the taxpayer's method of accounting, the treatment of such liabilities as "other property" received by the transferor produces an absurd result. Accordingly, in the *Bongiovanni* case, the appellate court said:

> Section 357(c)—if read literally—requires that "liabilities" assumed by the transferee corporation which exceed the aggregate adjusted basis of the properties transferred are to be considered as gain from the sale or exchange of that property. However, we believe that the word "liability" is used in Section 357(c) in the same sense as the word "liability" referred to in the legislative history of Section 357(c). It was not meant to be synonymous with the strictly accounting liabilities involved in the case at bar. Section 357(c) was meant to apply to what might be called "tax" liabilities, i. e., liens in excess of tax costs, particularly mortgages encumbering property transferred in a Section 351 transaction. See 3 U.S. Code Cong. & Admin. News pp. 4064, 4266–67, 4908 (1954). Any other construction results in an absurdity in the case of a cash basis taxpayer whose trade accounts payable are not recognized as a deduction (because he is on the cash basis) but whose "liabilities" (although unpaid) *are* recognized for purposes of Section 357(c). The payables of a cash basis taxpayer are "liabilities" for *accounting* purposes but should not be considered "liabilities" for *tax* purposes under Section 357(c) until they are paid. See Note, Section 357(c), And The Cash Basis Taxpayer, 115 U. Pa. L. Rev. 1154 (1967). [470 F. 2d 921, 923–924 (C.A. 2, 1972).]

In resolving this issue, wherever possible it is our duty to arrive at a decision which will be compatible with the statute as a whole. As Judge Rives said in *Davant v. Commissioner*, 366 F. 2d 874, 879 (C.A. 5, 1966), "rules prescribed by Congress in the Code are often wholly reasonable and appropriate when taken in isolation, but that fact alone should not and must not prevent a court from harmonizing these apparently divergent elements of specific policy so that they may continue to cohabit the same body of general law which Congress has directed shall be viewed as a single plan."

The decision of the appellate court in the *Bongiovanni* case achieves that result. In fact, it more nearly carries out the intent of the Congress in that a distinction is made not on the basis of "secured liabilities," but on the basis whether the liability in question was reflected in determining the income and expense of the taxpayer on a cash basis. Where a taxpayer buys a depreciable asset with borrowed funds, the deduction for depreciation enters into the computation of the taxpayer's income on a cash basis of accounting regardless whether the borrowings constitute a lien on the asset or represent a general obliga-

---

[2] For example, where the transferor has purchased machinery and equipment with borrowed funds, irrespective of the method of accounting, the transferor's basis for depreciation reflected the full cost of the machinery and equipment.

tion of the taxpayer. The indebtedness is reflected in the taxpayer's accounting. On the other hand, where the liability represents an inventoriable or deductible expense, it cannot be reflected in the computation of income on a cash basis until paid. The distinction makes sense, and I would adopt it.

With respect to the second issue, the facts are that for some 7 years Mr. Thatcher and Mr. Teeples had been partners in the contracting business in Portland, Oreg., and in the operation of a farm some 350 miles distant. They divided their duties, Mr. Thatcher being in charge of the contracting business and Mr. Teeples being in charge of the farm. As of January 1, 1963, a corporation was organized to take over the contracting business. Mr. Teeples owned or controlled 300 shares of a total of 500 shares of stock outstanding. In March 1963, the corporation entered into a contract to pay Mr. Teeples a total of $100,000 in monthly installments of $1,250 for such services as he might perform for the corporation. It was understood at that time that Mr. Teeples would continue to reside at the farm but would be available from time to time as needed.

In May of 1963, the corporation redeemed or repurchased the 300 shares of stock owned by Mr. Teeples for the sum of $42,500. Thereafter, in accordance with the custom of his church (Church of Jesus Christ of Latter Day Saints), Mr. Teeples was called upon to undertake a mission for the church in Formosa. He accepted the call. Thereupon the board of directors of the corporation voted to continue his salary during his absence. The respondent has determined that at least to the extent of $1,000 per month, the amounts paid to Mr. Teeples were not an allowable deduction under section 162(a)(1).

It is clear from the record that Mr. Teeples was withdrawing from the contracting business, whether in anticipation of the call from his church or otherwise. He so testified. Furthermore, in determining the price at which his stock, representing three-fifths of the outstanding stock of the corporation, was redeemed, Mr. Teeples said:

> I did not have access to the books, but I have an accountant that was handling the books all of the time. And when this split came we, of course, figured what we had, less the liabilities and the obligations that I had, to complete the jobs that we would have to complete, and that was the amount of money that was left over.

Such testimony is only compatible with the facts if it is assumed that the contractual liability to pay Mr. Teeples $1,250 per month until October 30, 1969, was also taken into account. In other words, either the employment contract was a part of the consideration for the sale by Mr. Teeples of his stock or the financial condition of the corporation was grossly understated to him. Since he was the controlling stock-

holder at that time, I am not inclined to accept the latter. We must assume, therefore, that the additional amounts which Mr. Teeples was to receive, whether he worked or not, were in part consideration to be paid for his stock.

GOFFE, *J.*, agrees with this opinion.

———

HALL, *J.* I respectfully dissent. If a cash method taxpayer transfers $1,000 of trade receivables to an outside party in exchange for the assumption and payment of $1,000 of the taxpayer's trade payables, he has no taxable income. He realizes $1,000 of gross income on the receivables, for they have been sold for payment of the payables, but he realizes an offsetting deduction of $1,000 on the payables, for they have been paid for by the recipient of the receivables. See *James M. Pierce Corp.* v. *Commissioner*, 326 F. 2d 67 (C.A. 8, 1964), reversing 38 T.C. 643 (1962) ; *Royal Oak Apartments, Inc.*, 43 T.C. 243 (1964) ; *Andrew Jergens*, 17 T.C. 806 (1951). Under the majority's reasoning, the same taxpayer making the same exchange with his wholly owned corporation will have $1,000 of taxable income. Section 351, intended as a shield against recognition of gain on incorporation, thereby perversely becomes a sword to impose a tax where none would be due in an ordinary recognizing transaction.

The difficulty with the majority's reasoning does not lie in the application of section 357(c), for the statutory mandate there is clear. In our illustration, the incorporating taxpayer has caused his corporation to assume $1,000 of liabilities, and the receivables transferred had a zero basis. Accordingly, $1,000 "shall be considered as a gain from the sale or exchange of * * * property [the receivables] which is not a capital asset." Sec. 357(c)(1). In other words, the taxpayer has made a taxable sale of his receivables. But what for? Clearly, assumption and payment of the payables. It is the assumption, under the statute, which generates the gain. But, as we have noted, when a cash method taxpayer sells his receivables for assumption and payment of his payables, he is just as much entitled to a deduction for payment of the payables as he is accountable for income on the sale of the receivables. Section 357(c) takes so much of the transaction out of section 351 and treats it as an ordinary recognizing exchange. It should be so treated as to both payables and receivables. Nothing in section 351 or 357 requires treatment of only *one* side of the receivable-payable "sale" as a recognizing transaction. The statutory purpose is far better served if payables paid by the transferee in the taxable year of transfer are treated as deductible to the transferor to the extent the offsetting receivables are treated as received by him. Since payment of a deductible liability by a cash method taxpayer gives rise to a deduction,

the same deduction should be allowed on payment when section 357(c) treats the liability as assumed in exchange for receivables.

Admittedly no such deduction is available where assets are transferred in a section 351 transaction to the extent not treated as a sale under section 357. *Arthur L. Kniffen*, 39 T.C. 553, 566–567 (1962);[1] *Doggett* v. *Commissioner*, 275 F. 2d 823 (C.A. 4, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 364 U.S. 824 (1960); *Citizens Nat. Trust & Savings Bank* v. *Welch*, 119 F. 2d 717 (C.A. 9, 1941). Likewise, a bankrupt gets no deduction on the mere transfer of assets to a trustee, where a new entity is created and there is no direct correspondence between transfer of assets and subsequent payment of the bankrupt's liabilities. *Henry C. Mueller*, 60 T.C. 36, 43–44 (1973); *B & L Farms Co.* v. *United States*, 238 F. Supp. 407, 409–410 (S.D. Fla. 1964), affirmed per curiam 368 F. 2d 571 (C.A. 5, 1966), certiorari denied 389 U.S. 835 (1967). Neither of these situations is comparable to the present facts, where (in order to avoid a negative basis) section 357 treats a portion of what would otherwise be a section 351 transaction as a taxable sale.

Our analysis is fully in accord with the purpose of section 357(c). Under it, there is no need to strain, as does *Bongiovanni* v. *Commissioner*, 470 F. 2d 921 (C.A. 2, 1972), to read the word "liabilities" in a difficult-to-define, artificial "tax" sense. Section 357(c) is given full, literal effect. As a matter of appropriate allocation, in the case of incorporation of a cash basis business, the trade accounts payable should, for this purpose, be netted against the trade accounts receivable, up to the lesser of the trade accounts payable or the amount of liabilities treated as paid under section 357(c). Such an allocation is simple, straightforward and best follows the statutory intent.

Applying these principles to the present case, the liabilities assumed exceeded the adjusted basis of assets transferred by $102,367.73. Accordingly, there is $102,367.73 of section 357(c) gain. There were $164,065.54 of unrealized accounts payable, and $317,146.96 of unrealized receivables. The corporation paid all the payables in peti-

---

[1] In *Arthur L. Kniffen*, 39 T.C. 553 (1962), the cash method taxpayer conceded and the Court found $8,246.58 of income under sec. 357(c)(1) on the transfer to a corporation of a sole proprietorship, the liabilities of which exceeded the adjusted basis of its assets by that amount. Among the liabilities so transferred and paid by the transferee were $22,466.31 in unpaid business expenses. The taxpayer claimed the full amount thereof as a deduction and it was denied on the authority of *Doggett* v. *Commissioner*, 275 F. 2d 823 (C.A. 4, 1960), affirming a Memorandum Opinion of this Court, certiorari denied 364 U.S. 824 (1960), and *Citizens Nat. Trust & Savings Bank* v. *Welch*, 119 F. 2d 717 (C.A. 9, 1941). The findings of fact do not indicate whether the assumed payables were in fact paid during the same taxable year. The taxpayer did not, in any event, contend that he was entitled to a deduction limited to the extent of his sec. 357(c)(1) gain, and the Court did not consider the point. The authorities cited in *Kniffen* by the Court, while clearly barring the deduction of the full $22,466.31, do not involve the present question of whether amounts taken out of sec. 351 by application of sec. 357(c) should give rise to deductions on payment of the liabilities giving rise to the application of that section.

tioner's same taxable year. Accordingly, all $102,367.73 of the section 357(c) gain would properly be allocated to sale of the receivables in exchange for assumption and payment of the payables, and the partnership should be treated as having paid $102,367.73 of the payables. Since the payables appear to have represented ordinary and necessary business expenses (they were all deducted by the corporation), the partnership was entitled to deduct that amount, which exactly offsets the section 357(c) ordinary gain on the receivables. There should be no net addition to taxable income on the transaction. It is not necessary for present purposes to consider the effect, if any, of application of the above analysis to the subsequent corporate payment of the payables assumed and receipt of the receivables purchased thereby.

FORRESTER and FEATHERSTON, *JJ.*, agree with this dissent.