WILLIAM H. CHRISTOPHER, JR., and LILY ANN CHRISTOPHER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Christopher v. Commissioner
Docket No. 13250-79.
United States Tax Court
T.C. Memo 1984-394; 1984 Tax Ct. Memo LEXIS 280; 48 T.C.M. (CCH) 663; T.C.M. (RIA) 84394; July 30, 1984. Richard F. McDivitt and Kevin D. Wotley, for the petitioners. Robyn R. Jones, for the respondent. WILBUR
MEMORANDUM FINDINGS OR FACT AND OPINION WILBUR, Judge: Respondent determined a deficiency in petitioners' 1976 Federal income tax in the amount of $5,863.55. After concessions, the issues for our decision are (1) whether petitioners recognized gain of $2,596.85 *282 upon incorporation of William Christopher, Jr.'s sole proprietorship and (2) whether petitioners' pro rata share of the net operating loss of that corporation is limited to $13,096.82. Resolution of both issues depends upon whether certain liabilities of the proprietorship were assumed by the corporation at formation. FINDINGS OF FACT Some of the facts have been stipulated and those facts are so found. The stipulation and attached exhibits are incorporated by this reference. Petitioners William H. Christopher, Jr. and Lily Ann Christopher resided in Tulsa, Oklahoma when they filed the return and petition in this case. Petitioner Lily Ann Christopher is a party to this proceeding solely because she filed a joint Federal income tax return with her husband; William H. Christopher, Jr. will therefore be referred to as petitioner. In 1971 William H. Christopher, Jr. started a business called Cycle-Kart Racers. This sole proprietorship sold bicycles, mopeds, and race cars. On August 21, 1975, petitioner received a loan of $46,000 from the Bank of Commerce in Tulsa. It was recorded on the proprietorship's general ledger as a credit along with other Bank of Commerce notes. Christopher *283 deposited the proceeds of this demand note in the bank account called "Cycle-Kart Racers", and used the funds for operating capital. The note was extended on May 17, 1976 at an 8.5 percent interest rate. At the end of 1975 the proprietorship had an outstanding liability to the Bank of Commerce of $127,000 which included the $46,000 note. On June 17, 1976, petitioner incorporated the sole proprietorship, and called his new subchapter S corporation Cycle-Kart Racers, Inc. On June 30, petitioner exchanged the assets and liabilities of the proprietorship for 425 of the 500 shares of stock issued by the new corporation. Petitioner's son Mark J. Christopher received 50 shares; his daughter Chris Ann Christopher owns the remaining 25 shares. Immediately prior to incorporation, petitioner's sole proprietorship had assets with an adjusted basis of $156,530.77; liabilities were $159,127.59. The opening balance sheet of the corporation shows assets and liabilities of $159,627.59. Petitioner balanced the books by creating an artificial receivable of $3,096.82 which reflected the $2,596.82 difference between assets and liabilities and created a paid-in capital account of $500. The artificial *284 receivable did not represent a bona fide asset of the corporation. Financial operation of the cycle business was not affected by the incorporation. Interest and principal payments to the Bank of Commerce on the $46,000 note were made from the same bank account before and after incorporation, and petitioner did not begin using checks printed with "Cycle-Kart Racers, Inc." until 1978. The $127,000 liability to the Bank of Commerce appears on the records of both the proprietorship and the new corporation. Petitioner did not transfer $46,000 from his personal account to the corporation in 1976. He reported no interest income from the corporation on his 1976 return, nor did he claim any deduction for interest paid on the note of $46,000. Sometime prior to November 30, 1976, the close of the corporation's fiscal year, petitioner lent $10,000 to the corporation; this was recorded on the books as a "loan from officer." In its short fiscal year ended November 30, 1976, Cycle-Kart Racers, Inc. had a net operating loss of $28,977.05. Petitioner calculated his pro rata share of this loss as $24,630.50 and deducted that on Schedule E of his 1976 return. This loss, along with other items, *285 was challenged by the respondent on audit. During 1977 and 1978 petitioner and his accountant, Martin Engman, had meetings with various Internal Revenue Service employees. Petitioner claims that he informed the agents that the new corporation had not assumed the $46,000 note from the Bank of Commerce, but that he had remained personally liable on that note, and executed a new 9 percent note running from the corporation to him. He did not confer with either his accountant or his attorney about this, but allegedly typed and executed the note himself on June 30, 1976. Petitioner claims that he gave the original note to his accountant during the audit, and says that Engman turned it over to the respondent along with many other documents. None of the three agents who testified at trial remembers receiving the original of the note. At trial petitioner introduced a copy of this note into evidence. Upon objection by respondent, the Court received the note subject to a reservation as to its authenticity. All of the assets and liabilities of petitioner's sole proprietorship were transferred to the subchapter S corporation, Cycle-Kart Racers, Inc. Both the sole proprietorship (Cycle-Kart *286 Racers) and the corporation (Cycle-kart Racers, Inc.) were on the accrual method of accounting. OPINION Petitioner William H. Christopher, Jr. is the majority shareholder of a subchapter S corporation that was formerly a sole proprietorship. At the time of incorporation the liabilities of the proprietorship exceeded the basis of the assets by $2,596.82. One of the liabilities was a $46,000 note to the Bank of Commerce for which the petitioner was personally liable. The central factual issue for our resolution is whether this debt was assumed by the newly formed corporation. Petitioner claims that the note was not assumed by the corporation. Instead, petitioner contends, he remained personally liable to the bank and had the corporation execute a note to him for a separate loan of $46,000. He asserts that he gave the original of the note to his accountant who then turned it over to revenue agents in the course of an audit. Respondent, on the other hand, contends that no note was executed at the time of the incorporation, and that the corporation did assume all the liabilities of petitioner's sole proprietorship. We agree with respondent. We must first decide whether the copy *287 of petitioner's note is admissible in evidence. The Federal Rules of Evidence generally permit the use of copies rather than originals, Rule 1003, but an exception is made if "genuine question is raised as to the authenticity of the original." Additionally, Rule 901 requires that all evidence be authenticated, i.e., that the proponent show that "the matter in question is what its proponent claims." In the instant case the question is whether the note was executed at the time of incorporation as petitioner claims, or whether it was a fabrication as argued by respondent. Petitioner offered no evidence demonstrating that the note was in fact executed in June 1976 other than his own testimony. His accountant did not recall receiving this specific document from petitioner, and none of the three agents remembers seeing the original note. We find this insufficient evidence of authenticity, and therefore will not consider the note as evidence. Under Oklahoma law, there is a presumption that the debts of *288 an unincorporated entirely are assumed by its successor corporation when "the property is simply transferred to the corporation without consideration other than corporate stock issued to the individuals and the business is but a continuation of the old and is conducted as before, under the same name and management * * *." Jones v. Eppler,266 P.2d 451, 458 (Okla. 1953); Cunningham v. Spencer,111 Okla. 217, 239 P. 444 (1925). In these situations, no express assumption of liabilities is required. [1] A similar presumption has been endorsed in cases decided by this Court. Rosen v. Commissioner,62 T.C. 11 (1974), affd. without published opinion 515 F.2d 507 (3d Cir. 1975); Cf. Beaver v. Commissioner,T.C. Memo. 1980-429. *289 The books and records of the proprietorship and the corporation support this presumption in the instant case. Both balance sheets showed an outstanding liability to the Bank of Commerce of $127,000; payments on the $46,000 note were made from the Cycle-Kart Racers account both before and after incorporation; and the bank's record of interest payments made on the note shows no change at the time of incorporation. Petitioner offered little concrete evidence to support his version of the events. He did not confer with either his lawyer or his accountant at the time of incorporation about this indebtedness, and no one witnesses execution of the note that memorializes petitioner's alleged loan to the corporation. Mr. Christopher stipulated that he never transferred any of his personal funds to the corporation in July 1976; he also stipulated that he neither reported interest income paid by the corporation, nor took deductions for interest he paid to the bank. [2] At bottom, petitioner relies only on his own uncorroborated testimony that he did execute this note. The overwhelming weight of the evidence leads us to conclude that the $46,000 liability was assumed by Cycle-Kart Racers, *290 Inc. at incorporation. [3]
Having resolved that factual issue we must decide whether petitioner recognized *291 any gain at incorporation. Section 351[4]provides that no gain or loss shall be recognized upon the transfer of property to a corporation if the transferors are in control immediately thereafter. Petitioner was in control, defined by section 368(c) as ownership of at least 80 percent of the corporate stock, as he owned 85 percent of the shares after transfer. Under section 357(c), however, if the liabilities assumed by the corporation exceed the adjusted basis of the property transferred, the excess "shall be considered as a gain from the sale or exchange of a capital asset or of property which is not a capital asset, as the case may be." Section 357(c). At incorporation, the liabilities of the proprietorship were $159,127.59. The total adjusted basis of the assets was only $156,530.77, because the "artificial receivable," as petitioner himself labels it, was not shown to represent a bona fide asset of the corporation. Petitioner must therefore recognize ordinary *292 income of $2,596.82 on the transaction. [5]
Second, we must determine how much of the 1976 net operating loss of Cycle-Kart Racers, Inc. petitioner may deduct. *293 Section 1374[6]permits shareholders of a subchapter S corporation to deduct their pro rata share of any net operating loss, but the deduction is limited by section 1374(c)(2). That subsection provides that the deduction in any year shall not exceed the sum of the adjusted basis of the shareholder's stock plus the adjusted basis of any indebtedness of the corporation to the shareholder. Haber v. Commissioner,52 T.C. 255, 264 (1969), affd. per curiam 422 F.2d 198 (5th Cir. 1970). *294 As noted, the parties have disputed whether there was a valid loan between petitioner did his corporation for $46,000, respondent contending there was no such loan that may be used in calculating the amount of loss petitioner is entitled to deduct. Since we have found there was no valid loan for $46,000, this amount may not be used in computing the loss allowable. Omitting the $46,000 disputed item, respondent has consistently maintained that petitioner is entitled to a loss of $13,096.82. This is derived--according to respondent on brief--of two components: the $10,000 loan petitioner made to his corporation in 1976, augmented by "the cost of the stock to the taxpayer or in other words the adjusted basis. In this situation the cost would be the * * * equity account created at the time of incorporation plus the $2596.82 gain which petitioner would be required to recognize since the liabilities exceeded the assets at the time of the transfer." Since respondent has consistently allowed petitioner losses of $13,096.82, we allow petitioner $13,096.82. [7]
*295 Decision will be entered under Rule 155.
Footnotes
1. Oklahoma law generally requires a promise to answer for the debt of another to be in writing, Okla. Stat. Ann. tit. 15. sec. 136 (West 1973 plus 1982 Supp.). That rule, however, requires a writing only when the undertaking is collateral; it does not apply when a transferor of property accepts the transferee's promise to pay as consideration for the transfer. McEwen v. Vollentine,69 Okla. 130, 170 P. 490↩ (Okla. 1918).
2. Petitioner claims that the corporation paid the bank directly so as to avoid extra paperwork. If true, petitioner should have reported interest income equal to the difference in the interest rates on the two notes. ↩
3. Petitioner argues in his reply brief that under both Federal and Oklahoma rules of evidence the presumption that the liabilities were assumed is negated once he has introduced evidence showing that it is inapplicable. He is correct in stating that rebuttal evidence precludes the finder of fact from presuming the existence of the presumed fact, i.e., that the liabilities were assumed. However, the burden of persuasion is not shifted by this rebuttal evidence, and that fact finder is still free to infer the existence of the presumed fact. Rule 301, Federal Rules of Evidence; S. Rept. No. 93-1277, to accompany H.R. 5463 (Pub. L. No. 93-595) (1975); H. Rept. No. 93-1597 (Conf.) (1975), to accompany H.R. 5463 (Pub. L. No. 93-595). Petitioner has, quite simply, failed to carry this burden. See also Rule 142(a), Tax Court Rules of Practice and Procedure.↩
4. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue.↩
5. The income does not qualify for capital gain treatment since the property transferred included both inventory and depreciable assets used in the petitioner's trade or business. See sec. 1221. We also emphasize that the parties did not argue that Bongiovanni v. Commissioner,470 F.2d 921 (2d Cir. 1972), reversing a Memorandum Opinion of this Court; Thatcher v. Commissioner,61 T.C. 28 (1973), revd. in part and affd. in part 533 F.2d 1114 (9th Cir. 1976); or Focht v. Commissioner,68 T.C. 223 (1977), or any principles that may be derived therefrom have any application to this case, and we make no comment thereon. Congress incorporated the Focht holding in the statute, and subsequently extended similar treatment to accrual basis transferors for transfers after November 6, 1978. See Sec. 357(c)(3) as amended by Sec. 103(a)(12) of the Technical Corrections Act of 1979, Pub. L. 96-222, 94 Stat. 194, 1980-1 C.B. 499↩, 546.
6. The pertinent provisions of sec. 1374 as in effect for the year before the Court are as follows: SEC. 1374. CORPORATION NET OPERATING LOSS ALLOWED TO SHAREHOLDERS. (a) GENERAL RULE.--A net operating loss of an electing small business corporation for any taxable year shall be allowed as a deduction from gross income of the shareholders of such corporation in the manner and to the extent set forth in this section. * * * (c) DETERMINATION OF SHAREHOLDER'S PORTION.-- * * * (2) LIMITATION.--A shareholder's portion of the net operating loss of an electing small business corporation for any taxable year shall not exceed the sum of-- (A) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of the shareholder's stock in the electing small business corporation, determined as of the close of the taxable year of the corporation (or, in respect of stock sold or otherwise disposed of during such taxable year, as of the day before the day of such sale or other disposition) and (B) the adjusted basis (determined without regard to any adjustment under section 1376 for the taxable year) of any indebtedness of the corporation to the shareholder, determined as of the close of the taxable year of the corporation (or, if the shareholder is not a shareholder as of the close of such taxable year, as of the close of the last day in such taxable year on which the shareholder was a shareholder in the corporation). The subchapter S Revision Act of 1982, Pub. L. 97-354, 96 Stat. 1669, amended all of subchapter S. The provisions of former sec. 1374↩ are now found in sec. 1366(d).
7. A more careful analysis suggests respondent has been slightly generous with petitioner. See section 358 and section 1.358-3(b), example (2), Income Tax Regs.; Wiebusch v. Commmissioner,59 T.C. 777 (1973), affd. 487 F.2d 515↩ (8th Cir. 1973). Nevertheless, no assertion of a slightly greater deficiency has been made and we would look with distinct disfavor on any such assertion at this late date.